671 So.2d 540 (1996)
In re NEW ORLEANS TRAIN CAR LEAKAGE FIRE LITIGATION.
Nos. 95-C-2710, 95-C-2721, 95-C-2734, 95-C-2797, 95-C-2811, 96-C-0015, 96-C-0016 and 96-C-0017.
Court of Appeal of Louisiana, Fourth Circuit.
March 20, 1996.
Rehearing Denied April 24, 1996.
*542 Raymond J. Salassi, Jr., Harry S. Hardin, III, Judith V. Windhorst, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, for CSX Transportation, Inc.
Henry T. Dart, Metairie, for Plaintiffs' Management Committee.
David S. Kelly, Darryl J. Foster, Lemle & Kelleher, New Orleans, for Illinois Central Railroad Company.
Eric Shuman, McGlinchey Stafford Lang, New Orleans, for Novacor Chemicals Inc. and Polysar, Ltd.
*543 George J. Richaud, Young, Richaud & Myers, New Orleans, for Mitsui & Company (U.S.A.), Inc.
Charles M. Steen, Mark C. Dodart, Kyle J. Brackin, Phelps Dunbar, L.L.P., New Orleans, for General American Transportation Corporation.
Daniel Lund, Timothy F. Daniels, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, for AMF-BRD, Inc.
Benj. R. Slater, Jr., Benj. R. Slater, III, Mark E. Van Horn, Donald J. Miester, Jr., Slater Law Firm, New Orleans, for New Orleans Terminal Company.
James G. Burke, Jr., Wm. Daniel Wellons, Rebecca A. Fariss, Burke & Mayer, New Orleans, for Phillips Petroleum Company and Phillips 66 Company.
Before BYRNES, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
The instant consolidated writ applications were filed by eight individual defendants in a class action suit arising from a September 9, 1987 incident in a heavily-populated area of New Orleans East involving an explosion and fire caused by a leaking railroad tank car containing butadiene. The defendants seek review of two trial court judgments denying motions for summary judgment concerning the claims asserted by the class action plaintiffs under the provisions of La.C.C. 2315.3, relative to exemplary damages for "wanton and reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances," other than electricity. Three of the defendants who filed writ applications claim that the La.C.C. art. 2315.3 claims are preempted by federal law. All eight of the defendants claim that they cannot be liable under La.C.C. art. 2315.3 because of "status" issues; in other words, the defendants claim that the evidence presented in the trial on the motion for summary judgment establishes that they are entitled to judgment as a matter of law because it shows that they were not involved in the "storage, handling or transportation" of the butadiene at the time of the accident, as required for liability under La.C.C. 2315.3. We granted certiorari on all issues.
Facts
The plaintiffs allege that the leak and resultant fire in the instant case was caused by a defective or improperly-installed gasket on the tank car in question. The tank car started leaking butadiene, which was eventually ignited by an outside source, possibly a pilot light on an external water heater, plaintiffs claim. The Plaintiff Management Committee for the class action plaintiffs included the following entities as defendants: CSX Transportation [hereinafter "CSX"]; Illinois Central Railroad Co. ["Illinois Central"]; Novacor Chemicals, Inc. (formerly Polysar, Ltd.) and Polysar, Ltd. [hereinafter "Polysar"]; General American Transportation Corp. [hereinafter "GATC"]; Mitsui and Co. (U.S.A.), Inc. [hereinafter "Mitsui"]; AMF-BRD, Inc. [hereinafter "AMF-BRD"]; New Orleans Terminal Company [hereinafter "NOTC"]; and Phillips Petroleum Co. and Phillips 66 Co. [hereinafter "Phillips"]. The activities allegedly performed by each of these defendants in relation to the tank car are summarized below.
AMF-BRD: The tank portion of the tank car involved in the fire was manufactured by AMF-BRD in 1966, and the tank car was assembled by North American Car Corporation (now defunct), also in 1966. North American sold the tank car to Phillips in September of 1979.
Phillips: While in the possession of Phillips, the tank car underwent maintenance involving the allegedly-defective gasket on three different occasions. In November of 1981, Phillips installed an asbestos gasket in the tank's bottom manway closure. During repair and maintenance in November of 1984, Phillips replaced the asbestos gasket with a rubber gasket. In November of 1986, the tank car again underwent maintenance work. On this third occasion, the rubber gasket in the bottom manway closure was removed. The same gasket was reinstalled, using a silicone sealant to insure a proper fit. Phillips sold the tank car to GATC in December of 1986 "as is, where is."
*544 GATC: At the time of the accident, GATC owned the tank car in question. In February of 1987, GATC leased the tank car to Mitsui.
Mitsui: In September of 1987, Mitsui loaned the tank car to Polysar as a "business favor." The tank car was to be used to transport a shipment of butadiene from Goodhope, Louisiana, to Chattanooga, Tennessee.
Polysar: At Polysar's request, Mitsui arranged with GATX Terminals, Inc. [hereinafter "GATX"] for the offloading of 154,530 pounds of butadiene from the M/V Herman Schulte into the tank car at GATX's terminal facilities at Goodhope. The butadiene, which was purchased by Polysar overseas, was loaded into the tank car on September 4, 1987.
Illinois Central: After the tank car was loaded, it was transferred to Illinois Central, which transported the tank car to Jefferson Parish where it was turned over to New Orleans Terminal Company.
NOTC: NOTC delivered the tank car to CSX's interchange track in New Orleans at approximately 7:25 p.m. on September 8, 1987. At that time, the bills of lading on the tank car were allegedly placed in CXS's waybox. NOTC had notified CSX at approximately 6:30 p.m. that the tank car would be delivered shortly.
CSX: The tank car had not been inspected or accepted by CSX when the explosion and fire occurred at approximately 1:50 a.m. on September 9, 1987. The fire was not completely extinguished until 1:55 p.m. on September 10, 1987.
All defendants sought summary judgment on the exemplary damages issue. NOTC, Illinois Central, and CSX argued that federal regulations promulgated by the Department of Transportation preempt the application of the Louisiana code article. All eight defendants claim they do not qualify for liability under La.C.C. art. 2315.3 because of "status" issues.
The trial court denied all of the motions for summary judgment on July 19, 1995. Defendants filed motions for reconsideration and motions for new trial, which were also denied, on November 30, 1995. All eight defendants sought this court's supervisory jurisdiction.
Federal pre-emption
First, Illinois Central, NOTC, and CSX claim that they have no liability under La.C.C. art. 2315.3 because the effects of the codal article are preempted by the Federal Railroad Safety Act, 45 U.S.C. §§ 421-447 [hereinafter "FRSA"]. 45 U.S.C. § 434, relative to the preemptive effect of the Federal Railroad Safety Act, provides as follows:
The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard, relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.
The pre-emption doctrine has its roots in the Supremacy Clause of the U.S. Const. art. VI, cl. 2, which invalidates state laws that "interfere with, or are contrary to" federal law. See Hillsborough County, Florida v. Automated Medical Laboratories, Inc., 471 U.S. 707, 712, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 720-721 (1985). Basic to this constitutional command is the notion that all state provisions which conflict with federal law are without effect. Maryland v. Louisiana, 451 U.S. 725, 747, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 596 (1981). Pre-emption may be either express or implied and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. Fidelity Federal Savings & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-153, *545 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 674-675 (1982).
Therefore, when a state statute conflicts with or frustrates federal law, the former is preempted and can have no effect. U.S. Const., Art. VI, cl. 2; Maryland, 451 U.S. at 747, 101 S.Ct. at 2129, 68 L.Ed.2d at 596. In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law should be reluctant to find pre-emption. Evidence of preemptive purpose is sought in the text and structure of the statute at issue. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490, 499-500 (1983). If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent. CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 662-664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387, 395-396 (1993).
Relative specifically to the preemptive effect of the FRSA, the United States Supreme Court held in the CSX Transportation, Inc. case that the federal regulations which set the maximum operating speeds for all freight and passenger trains preempted the plaintiff's claim that the defendant's train was travelling at an excessive rate of speed. The facts of the case revealed that the train was travelling under the maximum speed when the accident occurred. In footnote 15 of the opinion, the Court recognized that the "preemption of respondent's excessive speed claim does not bar suit for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard." CSX Transportation, Inc., 507 U.S. at 675, 113 S.Ct. at 1743.
The Louisiana First Circuit Court of Appeal in Haydel v. Hercules Transport, Inc., 94-1246 (La.App. 1 Cir. 4/7/95), 654 So.2d 418, writ denied, 95-1172 (La. 6/23/95), 656 So.2d 1019, considered a very similar issue to the one presented by this case. In Haydel, the court concluded that application of La. C.C. article 2315.3 was not preempted by the Hazardous Materials Transportation Act, 49 U.S.C. § 5101 et seq.[1] [hereinafter "HMTA"]. In concluding that the statute was not preempted by the HMTA, the court noted that the purpose of the HMTA was "to provide adequate protection against the risks of life and property inherent in the transportation of hazardous material in commerce by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 5101.
The preemptive effect of the HMTA is set forth at 49 U.S.C. § 5125(b)(1) as follows:
Except as provided in subsection (c) of this section, a law, regulation, order, or other requirement of a State ... about any of the following subjects, that is not substantively the same as a provision of this chapter or a regulation prescribed under this chapter, is preempted:
. . . . .
(B) the packing, repacking, handling, labeling, marking, and placarding of hazardous materials.
The HMTA also provides a civil penalty to be assessed for violations of any of the provisions of the act. 49 U.S.C. § 5123 states that "[a] person who knowingly violates this chapter or a regulation prescribed or order issued under this chapter is liable to the United States Government for a civil penalty of at least $250 but not more than $25,000 for each violation." The defendants in Haydel contended that the statute preempted the effect of La.C.C. art. 2315.3 because the Louisiana law was not substantially the same as the federal provision; the First Circuit disagreed with the defendants. The court concluded that the statutes addressed separate and distinct issues, stating as follows:
However, LSA-C.C. art. 2315.3 merely sets forth a cause of action for exemplary *546 damages in favor of an individual person who is injured due to a defendant's wanton or reckless disregard for public safety while engaged in the storage, handling, or transportation of hazardous materials, which are defined by federal law. Therefore, while the Louisiana state provision is substantively different from the federal provision, the federal and state statutes address totally separate and distinct subject matters.
Further, the federal penalty provision (49 U.S.C. § 5123) does not provide a remedy for individual persons injured as a result of the handling of hazardous materials; it authorizes the imposition of a fine to be paid to the federal government in the event that a person knowingly violates the HMTA. Conversely, the provisions of LSA-C.C. art. 2315.3 operate in favor of the individual damaged by the careless disregard in the handling of hazardous materials, but do not impose any sort of civil penalty in favor of any governmental body.
Haydel, 654 So.2d at 418.
We find the reasoning of the Haydel case applicable to the FRSA, as well as to the HMTAthe FRSA does not preempt the provisions of La.C.C. art. 2315.3. Like the HMTA, the penalty provisions of the FRSA provide for fines and penalties to be paid to the federal government, not to the individual persons injured as a result of the improper storage, handling, or transportation of hazardous materials. Because the fines and penalties of the two provisions have different purposes, we hold that the FRSA does not preempt La.C.C. art. 2315.3.
Moreover, this conclusion is not inconsistent with the Louisiana Supreme Court's statements in Billiot v. B.P. Oil Co., 93-1118 (La. 9/29/94), 645 So.2d 604, that one of the three-fold purposes of La.C.C. art. 2315.3 is "to provide victims injured by such conduct with the incentive to act as the prosecutors of penal laws against such wrongdoers." Id. at 613. The fact that the Supreme Court observed in that case that "the purpose of the duty and the penalty [of La.C.C. art. 2315.3] are not to compensate the victim but to protect the public from risks of harm from toxic and hazardous substances by punishing and deterring violations of that duty to the public" does not mean that the statute is preempted by the FRSA, a question not even alluded to in Billiot.
Accordingly, we find that the trial court properly denied the motions for summary judgment based on federal pre-emption filed by Illinois Central, NOTC, and CSX. That judgment is hereby affirmed.

Status issues
By the second judgment at issue in the instant consolidated supervisory writ applications, the trial court denied motions for summary judgment filed by all eight individual defendants, in which they each claim that they cannot be found liable under La.C.C. art. 2315.3 because they were not engaged in "storage, handling, or transportation" the butadiene at the time of the explosion and resulting fire.
La.C.C. art. 2315.3 provides as follows:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. As used in this Article, the term hazardous or toxic substance shall not include electricity.
Obviously, La.C.C. art. 2315.3 does not require the victim's injury to have been caused by the exposure to a toxic substance; the victim must show only that the injuries were caused by the defendant's reckless conduct in handling a hazardous or toxic substance. Tillman v. CSX Transportation Co., 617 So.2d 46 (La.App. 4th Cir.1993), writ denied, 625 So.2d 172 (La.1993). See also Billiot, 645 So.2d at 620 (on rehearing). Moreover, "[i]mplicit in storing, handling or transporting is the requirement that the hazardous substance be in the possession or control of a person who then handles or otherwise deals with that substance." Wiltz v. Mobil Oil Exploration and Producing, N.A., Inc., 702 F.Supp. 607, 608 (W.D.La. 1989). However, no requirement that the defendant be in possession and control of the hazardous substance at the time of plaintiff's injury exists. King v. E.I. DuPont De Nemours, *547 850 F.Supp. 503 (W.D.La.1994). The statute, since it imposes a penalty, must be strictly construed. Chustz v. J.B. Hunt Transport, Inc., 95-0356 (La. 11/6/95), 662 So.2d 450.
None of the defendants claim that butadiene is not a hazardous or toxic substance under the provisions of La.C.C. art. 2315.3. Rather each of the defendants claims that the evidence presented on the trial of the motion for summary judgment is sufficient to prove that it cannot be liable under the article because it was not involved in the storage, handling, or transportation of the butadiene at the time the explosion and fire occurred.
The trial court judgment denying the motions or summary judgment on the status issues is based almost exclusively on Tillman, 617 So.2d 46. In that case, this court held that a truck driver injured in a collision with a train which was carrying hazardous substances had a cause of action under La. C.C. art. 2315.3, even though his injuries were not caused by the hazardous materials themselves. The reasoning of that case does not apply to the instant case, where the injuries unquestionably were caused by the hazardous substances being transported. The result in Tillman is based on the causation issue, not the status issue presented by this case. The status of the defendant as an entity which was involved in the storage, handling, or transportation of a hazardous substance at the time of the accident in Tillman was uncontested.
The actions of each of the individual entities filing motions for summary judgment are summarized below.
AMF-BRD: AMF-BRD's only involvement with the tank car was as manufacturer of the tank. Certainly, the plaintiffs make no allegations that AMF-BRD, Inc. had possession or control over the tank car at the time or after the time it was loaded with the butadiene. In fact, the uncontested record evidence shows that AMF-BRD has had no connection with the tank car since 1966. Thus, there is no evidence indicating that AMF-BRD was ever involved in storage, handling, or transportation of the butadiene in the instant case.
Accordingly, the trial court erred in denying AMF-BRD's motion for summary judgment. As the defendant was not involved in the storage, handling or transportation of the butadiene, it cannot be liable for exemplary damages under La.C.C. art. 2315.3. The trial court judgment denying AMF-BRD's motion for summary judgment is therefore reversed; AMF-BRD's motion for summary judgment on the issue of exemplary damages under La.C.C. art. 2315.3 is granted.
Phillips: Phillips also argues that it was not involved in the storage, handling or transportation of the butadiene. Phillips purchased the tank car from North American in September of 1979. During the time it owned the tank car, Phillips performed maintenance repairs on three occasions, the last time in November of 1986. The tank car was then sold to GATC in December of 1986. Thus, Phillips had no involvement in the loading and transporting of the butadiene in the tank car in September of 1987.
The jurisprudence interpreting La.C.C. art. 2315.3 requires a finding that the defendant have some possession or control over the hazardous substance prior to the victim's injuries. Because Phillips never had possession or control over the butadiene in the instant case, Phillips was not involved in the "storage, handling, or transportation" of the hazardous substance and cannot be held liable for exemplary damages under C.C. art. 2315.3. It is true that all of the maintenance procedures performed on the tank car involved the gasket which the plaintiffs allege was defective; however, that fact does not bring Phillips under the ambit of La.C.C. art. 2315.3. Accordingly, the trial court erred in denying Phillips' motion for summary judgment on the exemplary damages issue. The trial court judgment is reversed, and the motion for summary judgment on the issue of exemplary damages in favor of Phillips is granted.
GATC: GATC was the owner of the tank car, having purchased the tank car from Phillips "as is, where is" in December of 1986. GATC then leased the tank car to Mitsui in February of 1987, and had no contact with the tank car after that date. Further, *548 GATC had no connection with the butadiene cargo the tank was carrying and therefore was not involved in the actual storage, handling, or transportation of the butadiene. Under La.C.C. art. 2315.3 and the interpretive jurisprudence, GATC cannot be liable for exemplary damages and the trial court erred in denying General American's motion for summary judgment on the exemplary damages issue. The trial court judgment is reversed; General American's motion for summary judgment on the issue of exemplary damages is hereby granted.
Mitsui: Mitsui leased the tank car from GATC in February of 1987 and allowed Polysar to use it to transport the butadiene in November of 1987 as a "business favor." Mitsui claims that it had nothing to do with the loading or transportation of the butadiene. However, Polysar claims it contracted with and relied upon Mitsui to perform all the steps necessary to transfer the cargo from the ship at Goodhope to its plant in Chattanooga. The bill of lading named Mitsui as shipper.
Mitsui denies Polysar's allegations that it was responsible for the shipment of the butadiene, and claims that it simply assisted Polysar in obtaining transportation for the shipment of butadiene. The chemical was directly offloaded from the ship to the tank car by employees of GATX Terminals, who had previously loaded tank cars on lease to Mitsui with butadiene owned by Mitsui. Mitsui claims it simply asked GATX to offload the butadiene on Polysar's request. Concerning the bill of lading, Mitsui claims it simply used a pre-printed form, and that Mitsui's name should have been crossed out and replaced with Polysar's name.
As indicated by these facts, a material issue concerning who had control over the shipping of the butadiene exists, making summary judgment inappropriate. Mitsui contends that Polysar had control over the entire operation; Polysar alleges that Mitsui had responsibility for handling the entire matter. In light of these conflicting contentions, the trial court judgment denying Mitsui's motion for summary judgment on the issue of exemplary damages is correct. The difference between Mitsui and the defendants discussed above is that Mitsui may have been involved in a series of events related to the transportation of this particular load of butadiene, while the above defendants never had any connection with the transportation of this butadiene but only had a past relationship with the tank car. If Polysar proves at trial that Mitsui was responsible for the shipping, and if the plaintiffs prove that Mitsui performed its duties related to the shipping in a wanton and reckless manner, Mitsui could be subject to La. C.C. art. 2315.3 exemplary damages. The denial motion for summary judgment on the exemplary damage issue filed by Mitsui is hereby affirmed.
Polysar: Polysar owned the butadiene in question, having purchased it overseas. However, Polysar claims that it was not involved in "storage, handling, or transportation" of the butadiene at the time of the explosion and resulting fire. In support of this argument, Polysar claims that it contracted with Mitsui to handle shipping of the butadiene.
As noted above, genuine issues of material fact making summary judgment inappropriate exist concerning the party having responsibility for the shipping of the butadiene. Like Mitsui, the record indicates that Polysar could have some liability for La.C.C. art. 2315.3 exemplary damages, if Mitsui proves that it was responsible for the shipping, and the plaintiffs prove that Polysar performed its duties related to the shipping in a wanton and reckless manner. Under those circumstances, Polysar would have been involved in a series of events related to the transportation of this particular load of butadiene. Accordingly, the trial court judgment denying the motion for summary judgment on the issue of La.C.C. art. 2315.3 exemplary damages filed by Polysar is correct. That judgment is affirmed.
Illinois Central: After the tank car was loaded by GATX employees, it was transferred to Illinois Central, which transported the tank car from the GATX facility in Goodhope to Jefferson Parish, where it turned the car over to NOTC. Despite the fact that it was unquestionably involved in *549 storage, handling, or transportation of the butadiene, Illinois Central claims that it could not be liable under La.C.C. art. 2315.3 for two reasons: (1) undisputed evidence indicates that it conducted multiple inspections; and (2) it delivered the tank car to NOTC more than 48 hours prior to the time the tank car started leaking, according to the plaintiffs' allegations. Because it had no involvement with the tank car at the time of the explosion and fire, Illinois Central claims that La.C.C. art. 2315.3 has no application on its face.
We disagree with this interpretation of La.C.C. art. 2315.3. Nothing in the express language of the statute requires a finding that a person or entity be physically involved with the hazardous substance at the time the incident occurs as a prerequisite to liability. Without question Illinois Central was involved in the series of events related to the transportation of this particular load of butadiene, and therefore could be held liable under for La.C.C. art. 2315.3 exemplary damages, if the plaintiffs can prove that it performed its duties in a wanton and reckless manner. Thus, a genuine issue of material fact concerning Illinois Central's liability under La.C.C. art. 2315.3 exists, making summary judgment inappropriate. The trial court judgment denying the motion for summary judgment filed by Illinois Central is correct; it is hereby affirmed.
NOTC: NOTC received the tank car from Illinois Central and delivered it to the CSX interchange in New Orleans East where the explosion and fire occurred at approximately 7:25 p.m. September 8, 1987, some seven hours prior to the time the explosion occurred. NOTC claims that it placed the bills of lading for the tank car in CSX's waybox at that time. Moreover, NOTC had notified CSX at approximately 6:30 p.m. that day that the tank car was to be delivered shortly. NOTC, like Illinois Central, claims that it could not be liable under La.C.C. art. 2315.3 because it was not involved in the storage, handling, or transportation of the butadiene at the exact time of the explosion. The same analysis as applied to Illinois Central also applies to NOTCthe statute does not require that a liable party be involved with the hazardous substance at the time of the incident causing damage. NOTC, like Illinois Central, was involved in the series of events related to the transportation of this particular load of butadiene, and therefore could be held liable under for La.C.C. art. 2315.3 exemplary damages, if the plaintiffs can prove that it performed its duties in a wanton and reckless manner. Accordingly, genuine issues of material fact concerning NOTC's liability remain, and the trial court properly denied the motion for summary judgment on the issue of exemplary damages filed by NOTC.
Moreover, the record indicates that NOTC's possible liability under La.C.C. art. 2315.3 may not hinge solely on its role as of transporter of the butadiene; NOTC may also be vicariously liable for the negligence of its employees in failing to notify their supervisor or CSX of odors emanating from the area of the tank car prior to the explosion. At approximately 10:30 p.m., Ronald Williams, an NOTC engineer, while in the CSX yard, detected an unusual odor, which he dismissed as a dead animal. Ernest Thibodeaux, another NOTC employee, also noted the odor, which he said resembled butadiene, but told no one. During the depositions of these men, the plaintiffs attempted to discover the extent of training the company gave their employees concerning the transportation of hazardous materials. Plaintiffs could therefore be awarded exemplary damages against NOTC on the basis of the fact that the actions of its employees of were wanton and reckless. For that reason also, the trial court judgment denying the motion for summary judgment is correct. That judgment is hereby affirmed.
CSX: NOTC transported the tank car to the CSX interchange in New Orleans East at approximately 7:25 p.m. on September 8, 1987. The car was sitting at that interchange, which is located in a heavily-populated area, when the explosion and fire occurred. Nevertheless, CSX claims that it cannot be liable for exemplary damages under La.C.C. art. 2315.3 because it had not inspected or accepted the tank car prior to the incident and because it was not involved *550 in the storage, handling, or transportation of the butadiene at the time of the explosion. On the other hand, NOTC claims that the bills of lading had been placed in CSX's waybox when the tank car was delivered to the CSX exchange approximately seven hours prior to the explosion and fire which caused the damages in the instant case. That action, NOTC indicates, transferred custody of the tank car to CSX.
As noted above in the discussions concerning Illinois Central and NOTC, La.C.C. art. 2315.3 does not require that the defendant be actively involved in the storage, handling, or transportation of the substance at the time of the incident. CSX, like Illinois Central and NOTC, was involved in the series of events related to the transportation of this particular load of butadiene, and therefore could be held liable under for La.C.C. art. 2315.3 exemplary damages, if the plaintiffs can prove that it performed its duties in a wanton and reckless manner. Accordingly, the trial court judgment denying the motion for summary judgment on the issue of exemplary damages in favor of CSX is correct; it is hereby affirmed.

Conclusion
For the foregoing reasons, the trial court judgment denying the motions for summary judgment filed by Illinois Central, NOTC, and CSX based on federal pre-emption are affirmed. Moreover, the trial court judgment denying the motions for summary judgment filed by Mitsui, Polysar, Illinois Central, NOTC, and CSX based on the status issues are affirmed. However, the trial court judgment denying the motions for summary judgment filed by AMF-BRD, Phillips, and GATC based on the status issues are reversed. Summary judgment on the exemplary damages issues under La.C.C. art. 2315.3 is granted in favor of AMF-BRD, Phillips, and GATC. The case is remanded for further proceedings consistent with this decision.
WRIT GRANTED; TRIAL COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; REMANDED.
LOBRANO, Judge, concurring.
I concur with the majority result on both the status and federal pre-emption issues. However, I am not satisfied with test used in Haydel v. Hercules Transport Inc., 94-1246 (La.App. 1st Cir. 4/7/95), 654 So.2d 418, writ denied, 95-1172 (La. 6/23/95), 656 So.2d 1019 to determine if a state statute is preempted by federal legislation. In my opinion a more straightforward and concise test should be whether the state statute conflicts with and is contrary to the purpose or result of a federal statute. If so, then the state statute should give way to the federal legislation.
In the instant case La.C.C. art. 2315.3 does not conflict with federal legislation.
NOTES
[1] The HMTA is a law relating to railroad safety and § 434 of the FRSA applies to the HMTA as it relates to the transportation of hazardous material by rail. CSX Transportation, Inc. v. Public Utilities Commission of Ohio, 901 F.2d 497, 501 (6th Cir.1990), cert. denied, Public Utilities Commission of Ohio v. CSX Transportation, Inc., 498 U.S. 1066, 111 S.Ct. 781, 112 L.Ed.2d 845 (1991).