728 So.2d 434 (1998)
Marzell Ike DUMAS, et al., Plaintiffs-Appellants,
v.
ANGUS CHEMICAL COMPANY, et al., Defendants-Appellees.
No. 31,398-CA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
Rehearing Denied January 14, 1999.
*435 Dennis Hennen, Monroe, Calvin C. Fayard, Jr., Harold W. Aswell, Farmerville, Chester A. Bradley, III, Charles H. Heck, Monroe, Russ M. Herman, New Orleans, Michael J. Mestayer, New Iberia, David W. Robinson, Baton Rouge, for Plaintiffs' Steering Committee.
Herman, Herman, Katz & Cotlar, LLP By Russ M. Herman, James C. Klick, Steve Herman, New Orleans, for Plaintiffs-Appellants.
Lugenbuhl, Burke, Wheaton By Claude F. Bosworth, New Orleans, for Appellee Aetna and the Standard Fire Insurance Company.
Cook, Yancey, King & Galloway By Samuel W. Caverlee, Shreveport, for Appellee Ford, Bacon & Davis.
Davenport, Files & Kelly By Thomas W. Davenport, Jr., M. Shane Craighead, Monroe, for Appellee Glitsch, Inc. and Foster Wheeler Construction.
Hudson, Potts & Bernstein By Ben R. Hanchey, Monroe, for Appellee Angus Chemical Company.
Bickel & Brewer By Michael J. Collins, Elizabeth Handschuch, Dallas, TX, for Appellee IMC Global, Inc.
Before MARVIN, C.J., GASKINS and PEATROSS, JJ.
GASKINS, J.
This case arises from the May 1, 1991 explosion at the Angus Nitroparaffin Plant in Sterlington, La. The plaintiffs in this class action suit are appealing the grant of a partial summary judgment in favor of one of the defendants, Glitsch, Inc., the company that designed the processing tanks holding the chemical that allegedly exploded. Glitsch contended that it should not be liable for exemplary damages under La. C.C. art. 2315.3 because it did not store, handle, or transport the chemical involved. The trial court agreed and granted Glitsch's request for partial summary judgment on the issue of exemplary damages. For the following reasons, we affirm the trial court judgment.

*436 FACTS
One of the chemicals manufactured by the Angus chemical plant was nitromethane (NM), a substance used, among other things, for making fuel for race cars. Under certain conditions, this chemical is easily detonated and is more explosive than TNT. According to the plaintiffs, the Angus plant had previously been the sole producer of this chemical in the free world for some time. However, due to competition from another chemical producer, Angus undertook to improve the purity of the NM it manufactured. This required the construction of two additional distillation columns, SE16 and SE17. Glitsch had designed and manufactured the older distillation columns in use at the plant and Angus contracted with Glitsch in 1989 to design the two new distillation columns. The first column was designed to remove a substance called propionitrile from the chemical mix and the second column was used to store and redistill the NM. The plaintiffs contend that on the date of this catastrophe, an NM line was heated by fire and the line served as a fuse to detonate SE17 and then SE 16, causing the explosion which resulted in loss of life, injury and extensive property damage for numerous persons.
On April 29, 1992, a class action suit was filed against numerous defendants, including Angus Chemical Company, the owner of the plant, and Glitsch, Inc. Among other things, the plaintiffs sought to recover exemplary damages against Glitsch under former La. C.C. art. 2315.3. This article provided that, in addition to general and special damages, exemplary damages may be awarded, if it is proven that the plaintiffs injuries were caused by the defendant's wanton and reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.[1]
On November 19, 1996, Glitsch filed a motion for partial summary judgment on the issue of exemplary damages, claiming that the company never stored, handled or transported any hazardous substances prior to or at the time of the explosion on May 1, 1991. Glitsch argued that Angus contracted with Glitsch to design two skid-mounted units or towers to be used in distilling NM. According to Glitsch, the SE16 tower was completed in 1988 and the SE17 tower was completed in 1989. Glitsch contends that it merely designed and caused to be manufactured the devices which were used by others in the storage or handling of hazardous substances. It asserts that designing and manufacturing a piece of equipment does not constitute handling, storing or transporting a hazardous or toxic substance. Glitsch claimed that it did not construct the towers, did not install them, never operated them, did not test the chemicals involved and did not provide any start up service to Angus. Glitsch also asserts that it never actually possessed NM or exercised control over the chemical. Therefore, La. C.C. art. 2315.3 has no application to the company and it is not liable for exemplary damages. Glitsch also points out that the former La. C.C. art. 2315.3 is punitive and, as such, is to be strictly construed.
The plaintiffs opposed the motion for partial summary judgment, arguing that Glitsch designed and caused to be manufactured SE16 and SE17 which were used for the storage, handling and transport of NM. Therefore, the plaintiffs contend that there is a genuine issue of material fact as to whether Glitsch should be liable for exemplary damages.
The trial court granted Glitsch's motion for summary judgment. In reasons for judgment, the court noted that Glitsch admits that it designed the two distillation systems and caused them to be manufactured. It was though these systems that hazardous substances flowed. However, Glitsch neither installed nor operated the systems. The court recognized the plaintiffs' argument that, once installed, the distillation systems controlled the flow of hazardous material and their assertion that this constituted the storage, handling, or transport of hazardous substances. The court also recognized that the penalty *437 provision was to be strictly construed and found that Glitsch's activities did not constitute the storage, handling, or transport of hazardous or toxic substances for the purposes of La. C.C. art. 2315.3.
The plaintiffs filed a motion for new trial which was denied. On December 22, 1997, a judgment was filed, dismissing with prejudice the plaintiffs' exemplary damage claims against Glitsch. The court also certified the judgment as an appealable final judgment as required by La. C.C.P. art. 1915(B)(1) and (2). The plaintiffs have appealed the trial court judgment, continuing to urge that there is a genuine issue of material fact as to whether Glitsch stored, handled, or transported the hazardous substance.[2]

SUMMARY JUDGMENT
The plaintiffs claim that the issue of whether Glitsch stored, handled, or transported hazardous substances is a question of fact which may not properly be decided on a motion for summary judgment.
Before its repeal, La. C.C. art. 2315.3 provided:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that the plaintiff's injuries were caused by the defendant's wanton and reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. Thus, an appellate court questions whether a genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. Orea v. Brannan, 30,628 (La.App.2d Cir.6/24/98), 715 So.2d 108.
Summary judgments are governed by La. C.C.P. art. 966, which was amended in both the 1996 and 1997 legislative sessions. See Acts 1996, 1st Ex.Sess., No. 9 and Acts 1997, No. 483. The effect of these amendments is to establish that summary judgment is now favored. Indeed, the summary judgment procedure is today designed to secure the just, speedy, and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2); NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477; Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, writ denied, 96-3063 (La.3/7/97), 689 So.2d 1372.
La. C.C.P. art. 966 provides that a motion for summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. The mover has the burden of establishing an absence of a genuine issue of material fact. A fact is material if its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Banks v. State Farm Insurance Company, 30,868 (La. App.2d Cir.8/19/98), 717 So.2d 687. When a motion is made and supported as required under La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials in his pleadings, but his response must set forth specific facts showing a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967; Goodrich v. Caterpillar, Inc., 30,762 (La. App.2d Cir.8/19/98), 717 So.2d 1235.
The plaintiffs assert that whether Glitsch engaged in activities under La. C.C. art. 2315.3 which would create liability for exemplary damages is a question of fact that may not properly be decided on a motion for summary judgment. However, we note that the applicability of La. C.C. art. 2315.3 has been disposed of by motion for summary judgment in numerous cases by our state supreme court. See Chustz v. J.B. Hunt *438 Transport, Inc., 95-0356 (La.11/6/95), 662 So.2d 450; Giordano v. Rheem Manufacturing Company, 96-0758 (La.4/8/96), 671 So.2d 324; Smith v. Arcadian Corporation, 96-0614 (La.5/3/96), 672 So.2d 698. Therefore, we conclude that summary judgment is a proper procedural vehicle for the disposition of this issue. Also, for the reasons set forth below, we find that the trial court correctly granted summary judgment.

Discussion
In support of their contention that genuine issues of material fact exist as to whether Glitsch stored, handled or transported NM, the plaintiffs advance several arguments. They assert that the language and meaning of La. C.C. art. 2315.3 reflect issues relating to the punitive exposure of Glitsch. They further assert that the case of In re New Orleans Tank Car Leakage Fire Litigation, infra, does not support Glitsch's argument in favor of summary judgment. The plaintiffs also contend that La. C.C. art. 2315.3 should be interpreted in light of surrounding Civil Code articles and the concept of garde to find that Glitsch is liable for exemplary damages. The plaintiffs urge that public policy requires that exemplary damages apply to Glitsch. They also maintain that, in various pre-trial depositions, employees of Glitsch have admitted that the company was involved in the storage, handling, or transportation of hazardous substances. We find these arguments to be without merit.
As to the language and meaning of La. C.C. art. 2315.3, the plaintiffs contend that there is no requirement that Glitsch held, stored, or transported the chemicals at the time of the explosion. They also maintain that there is no requirement of a showing that Glitsch owned, leased, or sold the chemicals involved or that the company possessed the hazardous or toxic substances in any way. The plaintiffs allege that it is sufficient if Glitsch engaged in wanton or reckless disregard for public safety "in connection with" the storage, handling or transporting of NM, regardless of who might be doing the storing, handling, or transporting. The plaintiffs insist that "the bad actor and the storer, handler, or transporter of the hazardous substance need not be one and the same." Based upon their interpretation of La. C.C. art. 2315.3, the plaintiffs assert that a reasonable jury could conclude that: 1) Glitsch dealt with and had responsibility for the distillation of NM; 2) Glitsch was wanton or reckless in the direction, execution or disposition of NM at the plant; 3) Glitsch was responsible for the manner in which NM was "taken care of"; 4) Glitsch provided a space for storing NM at the plant; 5) Glitsch was wanton or reckless in providing a means of transportation for NM within the processing vessels; 6) Glitsch was wanton and reckless in connection with the handling, storage or transportation of NM. The plaintiffs urge that these factors are sufficient to raise genuine issues of material fact as to the applicability of exemplary damages under La. C.C. art. 2315.3, precluding summary judgment. The plaintiffs have failed to point to any authority supporting their interpretation of La. C.C. art. 2315.3.
The words of the statute and the cases construing it are clear regarding what is required to "store, handle, or transport" a hazardous or toxic substance. In interpreting the meaning of these terms, one case found that "storage" refers to the "safe keeping of goods in a depository," "handling" means "to deal with, act on, or dispose of," and "transportation" means "to transfer or convey from one place to another." Prestenbach v. Louisiana Power and Light Company, Inc., 592 So.2d 499 (La.App. 5th Cir.1991), writ granted and judgment amended on other grounds, 594 So.2d 882 (La.1992).
Other cases construing the provision hold that, implicit in storing, handling or transporting, is the requirement that the hazardous or toxic substance be in the possession or control of a person who then handles or otherwise deals with that substance. Without such a showing, exemplary damages may not be recovered. However, there is no requirement that the defendant be in possession and control of the hazardous substance at the time of the plaintiff's injury. See In re New Orleans Train Car Leakage Fire Litigation, 95-2710 (La.App. 4th Cir. 3/20/96), 671 So.2d 540, writs denied 96-0972, 96-0984 (La.6/28/96), 675 So.2d 1120 and 96-0977, 96-0978, 96-1287, 96-1311 (La.6/28/96), 675 *439 So.2d 1121, cert. denied 519 U.S. 1009, 117 S.Ct. 512, 136 L.Ed.2d 402 (1996); Gaspard v. Orleans Parish School Board, 96-1754 (La.App. 4th Cir. 2/5/97), 688 So.2d 1298; Galjour v. General American Tank Car Corporation, 769 F.Supp. 953 (E.D.La.1991); Wiltz v. Mobil Oil Exploration and Producing North America, Inc., 702 F.Supp. 607 (W.D.La.1989).
In the case of In re New Orleans Train Car Leakage Fire Litigation, supra, the plaintiffs alleged that a leak of butadiene from a tank car and the resultant fire was caused by a defective or improperly installed gasket on the tank car. Numerous defendants filed motions for summary judgment, claiming that they did not store, handle, or transport the hazardous substance which caused the harm and therefore were not liable for exemplary damages under La. C.C. art. 2315.3. The court examined the claims of each defendant and granted summary judgment as to some and denied it as to others.
The court found that summary judgment should be granted in favor of the company that manufactured the tank car. The car was manufactured in 1966 and the leakage and fire took place in 1987. The court found that the manufacturer never stored, handled, or transported the butadiene which caused the incident.
The company that originally owned the tank car performed maintenance on the gasket on three different occasions. However, that company did not own the tank car at the time of the leak. The court found that performing maintenance on the tank car prior to the time it was filled with butadiene did not constitute storage, handling, or transporting the hazardous substance. Accordingly, summary judgment was appropriate, dismissing the plaintiffs' claims for exemplary damages against that company.
The company that owned the car at the time of the leak had leased it to another company who then lent the car to a third company. The court found that the owner of the tank car had no connection with the butadiene cargo carried in the tank car and therefore was not engaged in the actual storage, handling or transportation of the hazardous substance. Therefore summary judgment was granted, dismissing the plaintiffs' claims as to the owner of the tank car.
The lessee of the tank car made arrangements for the butadiene to be offloaded from a ship to the tank car. As to the lessee and the company that borrowed the tank car to transport the butadiene, the court found that summary judgment should not be granted because genuine issues of material fact remained as to whether they were wanton and reckless in the storage, handling, or transportation of the hazardous substance. Also, summary judgment was denied as to several companies that were involved in actually moving the loaded tank car from place to place. Illinois Central and New Orleans Terminal Company each moved the loaded tank car. The leak and fire then occurred while the car was on property owned by CSX Transportation Company. As to these three defendants, summary judgment was denied as to exemplary damages. For similar results on the same facts on the federal level, see Galjour v. General American Tank Car Corporation, supra.
We reject the plaintiffs' assertion that In re New Orleans Train Car Leakage Fire Litigation, supra, fails to support Glitsch's claim for partial summary judgment and we reject the distinction the plaintiffs attempt to draw between the manufacturer in In re New Orleans Tank Car Leakage Fire Litigation, supra, and Glitsch. Both manufacturers designed an instrumentality by which others stored, handled, or transported hazardous or toxic substances. However, the use for which a thing is designed is not the pertinent question in deciding the applicability of La. C.C. art. 2315.3.
The plaintiffs also argue that Glitsch continued to be involved with the tanks by going to the plant after the tanks were installed, observing the distilling process and submitting specific instructions to the plant on the continued operation of the chemical process. The record shows that in the present case, Glitsch designed a system for processing NM and, after the system was installed and started up by others, an employee of Glitsch visited the Angus plant, *440 observed the operation and made suggestions for improving the operation. There is no showing that plant operators were obligated in any way to follow the suggestions. Therefore, we do not find that, through a visit to the plant by an employee, Glitsch ever had possession or control over the NM that allegedly exploded in this case or ever handled or otherwise dealt with the substance.
Under Louisiana law, statutes such as La. C.C. art. 2315.3, which impose a penalty such as punitive or exemplary damages are to be strictly construed. Chustz v. J.B. Hunt Transport, Inc., supra; Weaver v. Valley Electric Membership Corporation, 615 So.2d 1375 (La.App. 2d Cir.1993); State Farm Fire and Casualty Company v. Sewerage and Water Board of New Orleans, 97-1862 (La. App. 4th Cir. 2/25/98), 710 So.2d 290. Contrary to this jurisprudence, the plaintiffs urge a broad construction of the provision in order to obtain exemplary damages against Glitsch. Here, Glitsch designed the instrumentalities by which the chemical plant and its operator stored, handled, or transported NM. Glitsch at no time engaged in those activities itself. Glitsch did not install the tanks, did not start up the tanks and never in any way exercised possession or control over the NM which allegedly caused the explosion in this case. Therefore, there is no showing that Glitsch had possession or control of the NM at any time prior to the explosion, as required by In re New Orleans Train Car Leakage Fire Litigation, supra.
We also reject the plaintiffs' argument that exemplary damages may be claimed if Glitsch's activities were in any way involved "in connection with" the storage, handling or transport of NM. This argument is similar to that rejected in Strauch v. Gates Rubber Company, 879 F.2d 1282 (5th Cir. 1989), cert. denied 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990). In that case, a products liability claim was brought for damages occurring when a hose carrying anhydrous ammonia broke, causing the ammonia to escape. The plaintiff also sought exemplary damages under La. C.C. art. 2315.3. The manufacturer argued that La. C.C. art. 2315.3 requires a defendant to be "engaged in" the storage, handling, or transportation of a hazardous substance before its activities come within the purview of the statute. The claim for exemplary damages against the manufacturer of the hose was dismissed because the manufacturer never stored, handled, or transported the hazardous or toxic substance. The plaintiff appealed, arguing that it is sufficient if the defendant's activities merely "relate to" the storage, handling, or transportation. The federal fifth circuit found that the plaintiffs interpretation of La. C.C. art. 2315.3 reached too far. The court found that the manufacturer of the hose produced an instrumentality by which others stored, handled, or transported a hazardous substance. However, the manufacturer engaged in none of those activities. The court then stated:
Whether it is ever appropriate to assess exemplary damages against the manufacturer of material that is used for the storage, handling or transportation of hazardous substances for the dangerous or reckless design of the product is a question not now before us. But if such relief is to be granted, it must have as its source some statute other than article 2315.3.
Although not binding on this court, we find federal authority on the interpretation of La. C.C. art. 2315.3 to be instructive and in this instance, persuasive. Imposing exemplary damages under La. C.C. art. 2315.3 upon one who merely manufactures the instrumentality by which another party stores, handles, or transports a hazardous or toxic substance is not warranted under the language of the statute.
We also reject the plaintiffs' argument that the concept of garde applies to this case. This concept is used in the field of products liability law to impose liability on the manufacturer of a thing, even if he does not have possession of the thing at the time an injury occurs. As stated above, the exemplary damage provision at issue here is to be strictly construed. The plaintiffs have presented no persuasive authority in support of their argument that concepts of products liability law should be applied to expand the application of this article. While the plaintiffs *441 may have a products liability claim against Glitsch, that issue is not presently before this court. The plaintiffs' argument as to the concept of garde is rejected.
The plaintiffs urge that public policy supports the imposition of exemplary damages in this case. They contend that the purpose of the statute is to penalize those who wantonly or recklessly expose the public to grave and serious harm. According to the plaintiffs, this should include "all parties in the series of events connected with the handling, storage and transport of the hazardous or toxic substances." According to the plaintiffs, it would violate the purpose of the statute if the architect of a unique chemical processing system which controls how dangerous chemicals are handled, transported, or stored was exempted from exemplary damages.
The purpose of La. C.C. art. 2315.3 was threefold: (1) to penalize and punish defendants for engaging in wanton and reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances that cause injury to others; (2) to deter the tortfeasors and others who might follow their examples from exposing the public to the dangers of that kind in the future; (3) to provide victims injured by such conduct with the incentive to acts as the prosecutors of penal laws against such wrongdoers. Rivera v. United Gas Pipeline Company, 96-502 (La.App. 5th Cir. 6/30/97), 697 So.2d 327, writs denied 97-2030 (La.12/12/97), 704 So.2d 1196 and 97-2031, 97-2032, 97-2034 (La.12/12/97), 704 So.2d 1197. Once again, the plaintiffs seek to broaden the application of La. C.C. art. 2315.3, a punitive statute which is to be narrowly construed. The plaintiffs have failed to show that the statute is applicable to the facts of this case. We reject the plaintiffs' efforts to expand the application of this article.
Citing excerpts from depositions by several Glitsch employees and others, the plaintiffs claim that Glitsch admitted it handled, transported and stored hazardous chemicals. On this basis, the plaintiffs contend that the partial summary judgment in favor of Glitsch must be overturned. We have extensively examined the statements made by Glitsch employees and find no admissions that the company stored, handled or transported NM. Therefore, we reject the plaintiffs' argument in this regard.

CONCLUSION
We find that Glitsch showed it did not store, handle, or transport NM in this case and therefore, as a matter of law, was not liable for exemplary damages under La. C.C. art. 2315.3. Glitsch adequately supported its motion for partial summary judgment on this issue. The plaintiffs then failed to show that a genuine issue of material fact existed as to the applicability of La. C.C. art. 2315.3. Under that provision and the jurisprudence construing it, the trial court correctly granted partial summary judgment in favor of Glitsch, rejecting the plaintiffs' claim for exemplary damages. We affirm the trial court judgment. Costs in this court and in the court below are assessed to the plaintiffs.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, C.J., NORRIS, STEWART, GASKINS and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] This provision was repealed by Acts 1996, 1st Ex.Sess. No. 2 § 1, effective April 16, 1996. However, the act provided that the repeal was to be applied only to causes of action which arise on or after the effective date of the act. Therefore, the provision is still applicable to this cause of action which arose in 1991.
[2] On appeal, the plaintiffs point out that this partial summary judgment concerns only Glitsch's "status" as to whether it handled, transported or stored hazardous or toxic substances. Other issues such as fault or causation are not raised in this appeal.