hDENNIS R. BAGNERIS SR., Judge.
Applicants, Joseph Grefer, Camile Gre-fer, Rose Marie Grefer Haase and Henry Grefer (the “Grefers”) seek review from the overruling of their exception of no cause of action as to the plaintiffs’ claim for punitive damages.
FACTS
The Grefers own a tract of a property located in Harvey, Louisiana that is in part the subject of this putative class action proceeding. The petition, as amended, alleges that the named plaintiffs and the members of the putative class action suffered damages as a result of oilfield pipe cleaning operations conducted on property owned by the Grefers and leased to entities who performed the cleaning operations. The Grefers property became contaminated by naturally occurring radioactive materials as a result of the pipe cleaning operations. The Grefers previously sued entities responsible for the contamination of their property and were awarded a substantial judgment.
The Grefers filed a series of exceptions to the Master Supplemental and Amending Class Action Petition. The Special Master recommended that the Grefers’ exception of no cause of action as to the punitive damage claim be denied. The Grefer’s timely filed an exception to the Special Masters recommendation. | ¡/The district court subsequently adopted the report and recommendation, overruling the Grefers’ exception.
DISCUSSION
Exemplary, or punitive damages, were authorized by the legislature in 1984 for injuries that were caused by “the defendant’s wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.” La. C.C. art. 2315.3. The article was repealed by Acts 1996, 1st Ex. Sess., No. 2, § 1, effective April 16, 1996. The repeal was given prospective application only.
Because Article 2315.3 is an exception to the general public policy in Louisiana against punitive damages, it is to be strictly construed. Dumas v. Angus Chemical Co., 728 So.2d 434, 440 (La.App. 2 Cir. 12/9/98); Galjour v. General American Tank Car Corp., 769 F.Supp. 953, (E.D.La.1991). Accordingly, the “storage, handling, or transportation” language in article 2315.3 is to be narrowly interpreted. Dumas v. Angus Chemical Co, 728 So.2d at 440. In Prestenbach v. Louisiana Power and Light Co. Inc., 592 So.2d 499 (La.App. 5 Cir. 12/30/91), writ granted and judgment amended on other grounds, 594 So.2d 882 (La.1992), the court found that storage refers to the safe keeping of goods in a depository, handling means to deal with, act on, or dispose of, and transportation means to transfer or convey from one place to another.
The allegations contained in the petition relative to punitive damages are as follows:
*1216 II.
Defendants are liable, jointly, severally, and in solido, to plaintiffs and the class they represent, for the full amount of damages suffered by them, including exemplary damages, with legal interest from the date of judicial demand until paid and all costs of these proceedings, for the following: ...
[[Image here]]
_kX.
From at least 1997, when the Grefer’s [sic] filed a lawsuit against ITCO, ALPHA, TUBULAR, and the Oil Companies, the Grefer’s [sic], ITCO, and ALPHA knew of the foregoing phenomenon and knew that components of pipe scale posed a serious health risk to humans, but did not inform the public in general, and the plaintiffs in particular, of this hazard.
[[Image here]]
. XVI.
During the period of the effective dates of Civil Code Article 2315.8, Defendants were guilty of willful, wanton and reckless disregard for public safety in the storage, handling and transportation of toxic, hazardous, and/or radioactive substances, entitling plaintiffs to recover exemplary damages in addition to their compensatory damages.
The Grefers allege that the plaintiffs have failed to plead facts which if proven could establish a cause of action under now repealed article 2315.3. The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993). The court must accept the well-pleaded allegations of fact as true, and the issue at trial is whether, on the face of the petition, the petitioner is legally entitled to the relief sought. Id. The cause of action, as used in the peremptory exception, means the operative facts which give rise to the plaintiffs right judicially to assert the action against the defendant. Everything on Wheels Subaru, Inc., 616 So.2d at 1238. In developing this definition, the Supreme Court relied on Hope v. Madison, 192 La. 593, 188 So. 711, 715 (1939):
A cause of action is an act on the part of a defendant which gives rise to a plaintiffs cause of complaint; “the existence of those facts which give a party a right to judicial interference in his behalf’; “the situation or state of facts which entitles a party to sustain an action.” “When used with reference to the pleadings by which the cause of action is alleged, the phrase signifies the facts upon which the 14plaintiff s right to sue is based, and upon which the defendant’s duty has arisen, coupled with the facts which constitute the latter’s wrong.” Quotations from 2 Words and Phrases, First Series, Cause of Action, p. 1017.
Everything on Wheels Subaru, Inc., 616 So.2d at 1242, n. 4 (Emphasis in original omitted).
Because Louisiana uses fact pleading, to withstand this exception, the petition must set forth the material facts upon which the cause of action is based. It is insufficient for a petition to simply state legal or factual conclusions without setting forth the facts which support the conclusions. Montalvo v. Sondes, 93-2813, p. 6 (La.5/23/94); 637 So.2d 127, 131.
The Grefers contend that the allegations of the petition are so lacking in specificity and so conclusory and vague that they fail to state a cause of action under former article 2315.3 against the Grefers. Indeed, *1217 the petition makes no factual allegations as to how the Grefers handled, stored and transported the toxic, hazardous, and/or radioactive substances. The petition simply tracks the language of the statute and fails to suggest any facts relative to the actions of the Grefers which could give rise to the application of the statute.
In plaintiffs’ brief in opposition to the Grefers’ application, they suggest that the allegation that the Grefers owned land which was contaminated and which they knew was contaminated is sufficient to allege a cause of action under former article 2315.3. In support, plaintiffs loosely reference this court’s decisions in the Gentilly tank car case. Specifically, plaintiffs offer the disposition of CSX Transportation’s motion for summary judgment and its eventual liability for punitive damages as on point. In this regard, plaintiffs assert that CSX’s liability stemmed from the fact that CSX was the owner of the tracks and property on which the burning tank car sat. In point of fact, this court never intimated that CSX’s status as owner was relevant to a determination of the punitive damages issue. Although CSX owned Isthe tracks, the facts of the case established that CSX was actually engaged in the handling and transportation of the toxic substances at issue. Relative to the denial of CSX’s motion for summary judgment, this court wrote:
CSX: NOTC transported the tank car to the CSX interchange in New Orleans East at approximately 7:25 p.m. on September 8, 1987. The car was sitting at that interchange, which is located in a heavily-populated area, when the explosion and fire occurred. Nevertheless, CSX claims that it cannot be hable for exemplary damages under La.C.C. art. 2315.3 because it had not inspected or accepted the tank car prior to the incident and because it was not involved in the storage, handling, or transportation of the butadiene at the time of the explosion. On the other hand, NOTC claims that the bills of lading had been placed in CSX’s waybox when the tank car was delivered to the CSX exchange approximately seven hours prior to the explosion and fire which caused the damages in the instant case. That action, NOTC indicates, transferred custody of the tank car to CSX.
As noted above in the discussions concerning Illinois Central and NOTC, La. C.C. art. 2315.3 does not require that the defendant be actively involved in the storage, handling, or transportation of the substance at the time of the incident. CSX, like Illinois Central and NOTC, was involved in the series of events related to the transportation of this particular load of butadiene, and therefore could be held liable under for La.C.C. art. 2315.3 exemplary damages, if the plaintiffs can prove that it performed its duties in a wanton and reckless manner. Accordingly, the trial court judgment denying the motion for summary judgment on the issue of exemplary damages in favor of CSX is correct; it is hereby affirmed.
In re New Orleans Train Car Leakage Fire Litigation, 95-2710 (La.App. 4 Cir. 3/20/96), 671 So.2d 540, 549-550.
From the foregoing, it is clear that CSX’s motion for summary judgment was not denied on the basis that CSX owned the tracks in question. CSX’s argument was that it had not inspected or accepted the tank car prior to the incident; however, the facts demonstrated that CSX was nevertheless actively involved in the transportation of the Butadiene contained in the tank car.
On direct appeal of the verdict, CSX never alleged that it was not engaged in the storage, handling, or transportation of *1218 the hazardous Butedeine, and there is no discussion in any of this court’s opinions relative to CSX’s status as the | dandowner.[1] The plaintiffs’ argument with respect to the Grefers being similarly situated to CSX is misplaced.
At best, the facts as alleged by the plaintiffs indicate a tangential connection between the Grefers and the toxic NORM in question. As this court’s discussion in In re New Orleans Train Car Leakage Fire Litigation, 95-2710 (La. App. 4 Cir. 3/20/96), 671 So.2d 540, concerning GATX, the owner of the tank car in question, illuminates, mere ownership alone is insufficient without demonstrating that the party had any dealings with the substance itself. Federal jurisprudence also establishes that in order to come within the purview of the statute a defendant must be “ 'engaged in’ ” the storage, handling, or transportation of hazardous substances. Galjour v. General American Tank Car Corporation, 769 F.Supp. 953, 956 (E.D.La.1991); Wiltz v. Mobil Oil Exploration and Producing, North America Inc., 702 F.Supp. 607, 608 (W.D.La.1989) (“Implicit in storing, handling or transporting is the requirement that the hazardous substance be in the possession or control of a person who then handles or otherwise deals with that substance.”); Strauch v. Gates Rubber Co., 879 F.2d 1282 (5th Cir.1989) (manufacturer of synthetic gage hose used by others to transport a hazardous substance was not engaged in storage, handling, or transportation of a hazardous substance).
|7The petition fails to allege facts which suggest that relator stored, handled or transported hazardous or toxic substances. Therefore, the plaintiffs failed as a matter of law to state a cause of action against the relator for punitive or exemplary damages. The district court erred in denying the exception of no cause of action. Accordingly, this writ application is granted and the case remanded for the purpose of allowing the plaintiffs to amend the petition to assert a cause of action for punitive damages if possible.
WRIT GRANTED; JUDGMENT REVERSED; REMANDED.

. On appeal, this court further summarized the facts regarding CSX's involvement as follows:
On September 5, 1987, Illinois Central, at GAIX’s Good Hope terminal, put GATX 55996 [the tank car in question] into a train with other butadiene tank cars and transported it to an Illinois Central train yard. Illinois Central then moved GATX 55996 to interchange tracks where Illinois Central and AGS exchange railroad cars. (An "interchange” is an area of track where one railroad leaves rail cars for another railroad.) AGS then moved GATX 55996 to CSX's interchange tracks in GentíIIy. AGS delivered GATX 55996 and some other rail cars to CSX, and notified CSX’s employees to pick up GATX 55996 and the other rail cars, at about 7:25 p.m. on September 8, 1987. ¡ GATX 55996 remained on CSX's interchange tracks for over six-and-a-half hours until the fire broke out.
In re New Orleans Train Car Leakage Fire Litigation, 2000-0479, (La.App. 4 Cir. 6/27/01) 795 So.2d 364, 371-372.