828 So.2d 546 (2002)
Daniel ROSS, et al.
v.
CONOCO, INC., et al.
Clarence Landon, et ux.
v.
Conoco, Inc., et al.
No. 2002-C-0299.
Supreme Court of Louisiana.
October 15, 2002.
*547 Charles N. Harper, Kenneth R. Spears, Michael K. Powell, Swift, Spears & Harper; James B. Doyle, Richard J. Lorenz, Woodley, Williams, Boudreau, Norman, Brown & Doyle; David L. Hoskins, Arthur D. Garrett, III, Michael Hochman, Douglas *548 Behr, Kelly & Heckman; Stephen C. Carleton, Joseph R. Ballard, Erny & Garcia; Celeste R. Coco-Ewing, Stone, Pigman, Walther, Wittman & Hutchinson, Lake Charles; Robert E. Caraway, III, Plauche, Maselli, Landry & Parkerson, New Orleans, Counsel for Applicant.
William B. Baggett, William B. Baggett, Jr., Baggett, McCall, Burgess & Watson; Wells T. Watson, Lake Charles, Lawrence E. Abbott, New Orleans, Sarah E. Iiams, Deborah D. Kuchler; Abbott, Simses, Album, Knister & Kuchler; Andrew R. Johnson, IV, Plauche, Smith & Nieset, Lake Charles; Amanda Leigh Cheek Bradley, New Orleans, Milling, Benson & Woodward, Baton Rouge, Counsel for Respondent.
Tyson B. Shofstahl, New Orleans, Counsel for American Chemistry Council f/k/a Chemical Manufacturers Association (Amicus Curiae).
James A. Babst, New Orleans, Counsel for Louisiana Association of Business and Industry (Amicus Curiae).
CALOGERO, Chief Justice.
Former Louisiana Civil Code Article 2315.3 granted injured plaintiffs the right to seek punitive damages against parties who wantonly or recklessly disregard public safety in the storage, handling, or transportation of hazardous or toxic substances. We granted defendants' writ application to consider whether parties who have had no physical possession of or control over a hazardous or toxic substance can nonetheless be held responsible for punitive damages based on the acts of alleged co-conspirators.
Even assuming plaintiffs in this case can successfully prove that the defendant relators engaged in a conspiracy to harm the injured workers by misrepresenting the harmful effects of vinyl chloride, summary judgment in favor of defendants on the issue of punitive damages is appropriate. Although plaintiffs remain free to seek compensatory damages against defendant relators, alleged conspirators, we hold that only parties directly engaged in the storage, handling, or transportation of a hazardous substance, who actually possess or control that substance prior to the plaintiff's injury, may be liable for punitive damages under former Article 2315.3.

FACTS AND PROCEDURAL HISTORY
In these consolidated chemical exposure cases, plaintiffs are the survivors of Mr. Daniel Ross and Mr. Clarence Landon, each of whom worked at chemical facilities in Calcasieu Parish owned by Conoco Chemical, Inc., and later by Vista Chemical Co. Ross was employed from 1965 to 1990, and Landon from 1950 to 1987. Plaintiffs allege that Ross and Landon suffered occupational exposures to various toxic carcinogenic chemicals, including vinyl chloride. As a result of these exposures, the workers contracted the diseases that claimed their lives.[1]
Plaintiffs filed suit against the workers' employers, Conoco and Vista (hereinafter "employer defendants") and thirty-four "non-employer" defendants, generally alleging that these parties conspired among themselves, and with and through their trade associations, to conceal from the government and general public the nature and *549 extent of the hazards posed by vinyl chloride.[2] Specifically, both plaintiffs in their respective lawsuits contend that the employer and non-employer defendants conspired to commit the intentional tort of battery by overexposing Ross and Landon to vinyl chloride without their knowing consent. Plaintiffs thereafter settled with the employer defendants and a number of the non-employer defendants. The only non-employer defendants who have not settled and who remain in the lawsuit are: The Society of Plastics Industry, Inc.; Tenneco Oil Co. and Tenneco, Inc.; Minnesota Mining and Manufacturing Co. ("3M"); The BF Goodrich Co.; and Chevron U.S.A., Inc., as successor to Gulf Oil Corp.
In addition to compensatory damages, plaintiffs seek punitive damages against these remaining non-employer defendants under former La. Civil Code Article 2315.3,[3] which had provided for an award of punitive damages against a defendant if a plaintiff can prove injury "caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." Plaintiffs allege that, although the non-employer defendants did not themselves physically possess the hazardous vinyl chloride that harmed Ross and Landon, they can, nonetheless, be held liable for punitive damages based on the actual physical handling by their co-conspirators, the employer defendants. Once a conspiracy is successfully proved, the act of one co-conspirator is deemed to be the act of all co-conspirators, they contend.
Alternatively, plaintiffs submit that the individual acts of the non-employer defendants, including misrepresentation of the effects of vinyl chloride and failure to warn, amount to "storage, handling, or transportation" under the meaning of repealed Article 2315.3. In other words, plaintiffs allege in their alternative argument that these non-employer defendants are subject to being cast for punitive damages in their own right, not based on the acts of the employer defendants.
The non-employer defendants moved for partial summary judgment in the trial court, seeking to dismiss plaintiffs' claims for punitive damages. These defendants, asserting the established rule that strict construction must be given to punitive statutes, argued that former Article 2315.3 cannot be interpreted to include parties who never physically stored, handled, or transported a hazardous or toxic substance. They argue that a party must have control or possession of the substance to come within the ambit of former Article 2315.3. They cite Dumas v. Angus Chem. Co., 31-398,4 p. 8 (La.App.2d Cir.12/9/98), 728 So.2d 434, 438, writ denied, 99-0397 (La.4/9/99), 740 So.2d 631, and In re New Orleans Train Car Leakage Fire Litig., 95-2710, p. 9 (La.App. 4th Cir.3/20/96), 671 So.2d 540, 547, writ denied, 96-0972, 96-0984, 96-0978, 96-0977, 96-1287, 96-1311 (La.6/28/96), 675 So.2d 1120, 1121. The trial judge agreed with the non-employer defendants and granted their motion for summary judgment, reasoning that the court was "not at liberty to enlarge upon the law."
*550 The Third Circuit Court of Appeal reversed the trial court's grant of summary judgment and found that punitive damages may be assessed against the non-employer defendants for their individual involvement in events "integrally related to" the storage, handling, or transportation of hazardous or toxic substances in violation of former Article 2315.3. Ross v. Conoco, XXXX-XXXX, p. 3-4 (La.App. 3d Cir.12/26/01), 805 So.2d 352, 357. The court of appeal began by noting that when a civil conspiracy is alleged and proven, the injured party may recover against all participants in solido, and not merely against those who physically committed the injury. Id. (citing Rush v. Town of Farmerville, 156 La. 857, 101 So. 243 (1924)).
The court of appeal reasoned that, although a court cannot treat conspirators as one when assessing monetary liability for the harm occasioned by a violation of former Article 2315.3, a court can assess punitive damages against each conspirator based on individual culpability. Id. at 16, 805 So.2d at 366. The court then cited New Orleans Train Car for the proposition that a defendant involved in the "series of events related" to the handling, storage, or transportation of a hazardous substance can be liable for punitive damages if he performs his duties in a wanton or reckless manner. Id. The court found that it is this "series of events related" to the handling, storage, and transportation of vinyl chloride that potentially subjects the non-employer defendants to liability under former Article 2315.3. Accordingly, the court of appeal reversed the action of the trial court and found that the non-employer defendants acted in concert with the employer defendants and others to influence deliberately the manner in which vinyl chloride was handled, stored, and transported.
We granted the writ application to determine whether the court of appeal erred when it reversed the trial court's grant of summary judgment in favor of the non-employer defendants. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La. 1992). A court must grant a motion for summary judgment "if the depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966(B). The summary judgment procedure is favored under our law. Id.
For the reasons set forth below, we find plaintiffs failed to meet their burden of showing a genuine issue of material fact to defeat summary judgment by pointing to conduct of the non-employer defendants that is sufficient to invoke liability for punitive damages under former Article 2315.3. The non-employer defendants are, therefore, entitled to judgment as a matter of law.

LAW AND ANALYSIS
From its passage in 1984 until its repeal in 1996, Louisiana Civil Code Article 2315.3 granted the right to seek punitive damages to any person injured by a defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. This court has stated that the purpose of Article 2315.3 is threefold:
(1) to penalize and punish defendants for engaging in wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances that causes injury to *551 others; (2) to deter the tortfeasors and others who might follow their example from exposing the public to the dangers of that kind in the future; and (3) to provide victims injured by such conduct with the incentive to act as the prosecutors of penal laws against such wrongdoers.
Billiot v. B.P. Oil Co., 93-1118, p. 15 (La.9/29/94), 645 So.2d 604, overruled on other grounds, Adams v. J.E. Merit Constr., 97-2005 (La.5/19/98), 712 So.2d 88.
Plaintiffs contend, and the court of appeal agreed, that the conduct of the non-employer defendants falls within the scope of this punitive statute. The fourth supplemental and amending petition filed by the Ross plaintiffs alleges that "the conspiring defendants, along with and through their trade associations intentionally ... and untruthfully misrepresented their present and historical knowledge of the nature and extent of the hazards posed by vinyl chloride and the diseases caused by vinyl chloride." The petition further states that the non-employer defendants conspired with the employer defendants and trade associations to keep secret the results of numerous toxicological studies and bioassays conducted in Europe in the 1960s concerning the harmful effects of vinyl chloride. Additionally, the Ross plaintiffs accuse the non-employer defendants of publishing misleading studies and suppressing the unfavorable results of similar studies regarding the effects of vinyl chloride.
The Landon plaintiff's original petition alleged similar conspiratorial conduct on the part of the employer and non-employer defendants through their trade associations. Regarding the defendant 3M, the Landon plaintiff additionally claims that this company, which performed validation tests on passive dosimeters (badges manufactured by 3M and worn by the employees to monitor the level of vinyl chloride exposure), discovered that the dosimeters consistently underestimated the true levels of vinyl chloride present at the facilities. The Landon plaintiff asserts that 3M concealed the results of these tests from the public.
In sum, plaintiffs contend that the aforementioned actions of all defendants amount to a conspiracy to commit the intentional tort of battery on Ross and Landon, overexposing them to vinyl chloride without their knowing consent. Plaintiffs concede that no non-employer defendant had any actual possession or control of the offending vinyl chloride at any time. However, according to plaintiffs, actual possession or control on the part of the non-employer defendants is irrelevant because under the law of conspiracy, the act of handling by the employer defendants is treated as handling by all conspiring defendants.
Alternatively, plaintiffs allege that these same acts of the non-employer defendantsmisrepresentation and failure to warnconstitute an integral part of handling, storage, and transportation of the vinyl chloride that injured the plaintiffs; thus, the non-employer defendants are liable under former Article 2315.3 for their own actions, and not based on the acts of the employer defendants. We will address each of plaintiffs' arguments separately.
Conspiracy to store, handle, or transport vinyl chloride
Plaintiffs rely upon the language of La. Civil Code Article 2324 for the proposition that the punitive damages provided by former Article 2315.3 can be awarded against parties based on the acts of their co-conspirators. Article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable in solido, with that person, for the damage caused by such *552 act." Article 2324, however, does not by itself impose liability for a civil conspiracy. "The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part." Butz v. Lynch, 97-2166, p. 6 (La.App. 1st Cir.4/8/98), 710 So.2d 1171, 1174, writ denied, 98-1247 (La.6/19/98), 721 So.2d 473.
Significantly, plaintiffs have not alleged a conspiracy to store, handle, or transport vinyl chloride in a wanton or reckless manner. The underlying torts plaintiffs allege the defendants agreed to perpetrate and actually committed were battery upon and failure to warn the two workers. A conspiracy to commit battery and a corresponding failure to warn are not targeted by former Article 2315.3, which punishes only defendants involved in storage, handling, and transportation of a hazardous or toxic substance. In Williams v. A.C. & S., Inc., 700 F.Supp. 309, 310 (M.D.La.1988), the U.S. District Court for the Middle District of Louisiana recognized that, to recover punitive damages under Article 2315.3, a plaintiff must allege he was injured as a result of the defendants' storage, handling, or transportation of a hazardous substance. The Williams court declined to award punitive damages against defendants whose asserted fault was in the manufacture, design, and labeling of the products because that conduct was outside the scope of Article 2315.3.
For the reasons enunciated by the Williams court, plaintiffs have failed to show to this court how conspiracy to commit battery and to misrepresent fraudulently the harmful effects of vinyl chloride amount to a conspiracy to store, handle, or transport in a wanton or reckless manner the vinyl chloride that injured Ross and Landon. Even if plaintiffs did sufficiently allege a conspiracy to store, handle, or transport wantonly or recklessly the offending vinyl chloride, we find that former Article 2315.3 does not support the imposition of punitive damages against parties based solely on the physical acts of their co-conspirators.
Although Article 2324 provides for solidary liability among co-conspirators for the damage caused by a willful or intentional act, the court of appeal in this case correctly held that a court cannot assign liability for punitive damages among co-conspirators in solido. Ross v. Conoco, Inc., XXXX-XXXX, p. 15 (La.App. 3d Cir.12/26/01), 805 So.2d 352, 365. The purpose of solidary liability is to compel any tortfeasor to pay an entire judgment. See La. Civ.Code art. 2324(A). The purposes of punitive damages, on the other hand, are to punish defendants and deter similar conduct. James v. Formosa Plastics Corp., 95-1794, p. 4 (La.App. 1st Cir.4/4/96), 672 So.2d 319, 322, writ denied, 96-1091 (La.11/22/96), 683 So.2d 285. The James court found that punitive damages cannot be assessed against co-defendants in solido because, to accomplish their purpose of punishment and deterrence, punitive damages are assessed against an individual defendant based on his individual culpability, not on the acts of others. James, 672 So.2d at 322. We agree with the First Circuit's analysis in James.
Additionally, the language of Article 2324 that co-conspirators are answerable in solido "for the damage caused by such act" indicates that the Article imposes solidary liability only for compensatory damages. As the dissenting judge in the court of appeal below points out, this wording is important. See Ross, 805 So.2d at 369 (Amy, J., dissenting). It is compensatory damages that recompense a plaintiff for injury caused by a defendant's act. Punitive damages, on the other hand, are not caused by a defendant's act and are *553 not designed to make an injured party "whole." Rather, they are meant to punish the tortfeasor and deter specific conduct to protect the public interest. Billiot, 645 So.2d at 612. Consequently, we conclude that the solidarity imposed by Article 2324 cannot be used to assess punitive damages against a party based on the acts of co-conspirators. To be subject to punitive damages, each co-conspirator's individual conduct must fall within the scope of the applicable penal statute.
In addition, the plain language of former Article 2315.3 does not indicate that the legislature intended for parties engaged in activities beyond direct storage, handling, or transportation of a hazardous or toxic substance to fall within the ambit of the Article. Considering that this court's policy is to construe punitive statutes strictly, we see no reason to infer a legislative intent beyond the plain language of the statute. See International Harvester Credit v. Seale, 518 So.2d 1039, 1041 (La.1988).
The legislature could easily have phrased the statute to encompass parties not engaged in the physical acts of storage, handling, or transportation. It has phrased other penal statutes to encompass a wide range of participants, and not merely those directly engaged in the unlawful conduct. For example, the Louisiana Drug Dealer Liability Act provides an award of exemplary damages against not only those who directly sell or distribute illegal controlled substances, but also against anyone who wantonly or recklessly participates in the marketing of an illegal controlled substance. La.Rev.Stat. 9:2800.76 (1997). Additionally, a plaintiff whose wire or oral communication is intercepted may recover punitive damages against any person who "intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications...." La.Rev.Stat. 15:1312 (1985) (emphasis added).
The legislative history of former Article 2315.3 also supports the conclusion that only parties directly engaged in the prohibited conduct are targeted by the statute. The minutes of the June 4, 1984 meeting of the House Committee on Civil Law and Procedure reflect that the legislature passed this statute because it was troubled with the pro-defendant result in a particular case, Ashland Oil, Inc. v. Miller Oil Purchasing Co., rendered by the United States Fifth Circuit Court of Appeals in 1982. 678 F.2d 1293 (5th Cir. 1982). In that case, Rollins, Inc., a hazardous waste disposal company intentionally arranged for two million gallons of dichlorobutadiene, an extremely hazardous chemical waste product, to be deposited into a crude oil pipeline. Id. at 1300. Rollins, being aware of the potential danger and resulting liability, hoped that the chemical's origin could not be traced when mixed with the oil. Id. When the hazardous chemical entered the pipeline, an explosion and fire occurred. Id. at 1303. Even though the company's conduct was intentional and egregious, the Fifth Circuit noted that Louisiana law only permitted the court to award the plaintiffs compensatory damages. Id. at 1319. The legislature thereupon decided to create a statute allowing punitive damages for the wanton or reckless storage, handling, or transportation of hazardous or toxic substances.
The history of Article 2315.3 gives no indication that our legislature was concerned with targeting the remote conspiratorial conduct, as is urged by the plaintiffs in this suit. This history and the language of the article indicate a legislative determination that the public interest is adequately protected by punishing parties who wantonly or recklessly pollute our state and harm our citizens while storing, handling, *554 or transporting hazardous or toxic substances.
A look at the jurisprudence interpreting Article 2315.4, which was enacted at the same time as Article 2315.3, is also helpful to our analysis. Article 2315.4 states that exemplary damages may be awarded upon proof that the plaintiff's injuries "were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries."
In Bourque v. Bailey, 93-1657 (La.App. 3d Cir.9/21/94), 643 So.2d 236, writ denied, 94-2619 (La.12/16/94), 648 So.2d 392, a panel of the Third Circuit Court of Appeal considered the issue of whether persons who contribute to the intoxication of the driver, including a bar owner, store proprietor, and/or passenger who supply the driver with alcohol, could be cast with punitive damages through Article 2324.[4] The court noted that Article 2315.4 must be narrowly interpreted and that punitive damages are designed to penalize an intoxicated tortfeasor, not simply to compensate an injured plaintiff. Bourque, 643 So.2d at 241. The court relied on the legislative history of Article 2315.4 to determine that the intoxicated driver was the only party covered by the statute. Id. Accordingly, the court held that those co-defendant participants whose conduct is not directly targeted by Article 2315.4 cannot be bound by Article 2324 to shoulder the punitive damages responsibility. Id.
This court in Berg v. Zummo, 00-1699 (La.4/25/01), 786 So.2d 708, adopted the reasoning of Bourque and concluded that the legislature attempted to target only the conduct of the intoxicated driver of the motor vehicle when it passed Article 2315.4; thus, the Article does not allow the imposition of punitive damages against persons who have allegedly contributed to the driver's intoxication. As we are determining here, former Article 2315.3 was similarly targeted only at those parties who directly store, handle, or transport the hazardous substance that harms the plaintiff. Accordingly, alleged co-conspirators cannot be brought within the scope of this punitive statute through the application of Article 2324.
Therefore, even assuming that plaintiffs can successfully prove the existence of a conspiracy among the employer and non-employer defendants to harm or commit a battery upon Ross and Landon by misrepresentation and failure to warn of the hazards of vinyl chloride, we conclude that non-employer defendants who have never had physical contact with the vinyl chloride at issue cannot be assessed punitive damages under former Article 2315.3 based on the acts of storage, handling, or transportation by alleged co-conspirators. The civil conspiracy set forth in Article 2324, when sufficiently proven, authorizes the award of compensatory damages only.
Liability of each co-conspirator under art. 2315.3 based on individual actions
We next address the plaintiffs' alternative argument that, even if this court *555 does not apply conspiracy law, the individual conduct of the non-employer defendants constitutes storage, handling, or transportation of vinyl chloride under former Article 2315.3. The court of appeal below found genuine issues of material fact concerning whether the individual actions of the non-employer defendants in furtherance of the aforementioned conspiracy constituted wanton or reckless disregard for public safety in the storage, handling, or transportation of the vinyl chloride that injured Ross and Landon. Ross, 805 So.2d at 366.
The court of appeal based this holding on language from a Fourth Circuit Court of Appeal decision that defendants who did not have possession or control of the hazardous substance at issue at the time of plaintiff's injuries were, nonetheless, potentially liable under Article 2315.3 because they were involved in a "series of events related" to the storage, handling, or transportation of the substance. Ross, 805 So.2d at 366 (citing New Orleans Train Car, 671 So.2d at 548). We find, for the reasons stated below, that the court of appeal's opinion in this case here under consideration stands alone in its expansive interpretation of former Article 2315.3 because it fails to acknowledge the policy of strict construction of punitive statutes, misstates the actual holding of New Orleans Train Car, and conflicts with prior jurisprudence. See, e.g., Dumas v. Angus Chem. Co., 31-398, p. 8 (La.App.2d Cir.12/9/98), 728 So.2d 434, 438, writ denied, 99-0397 (La.4/9/99), 740 So.2d 631; Gaspard v. Orleans Parish Sch. Bd., 96-1754 (La.App.4th Cir.2/5/97), 688 So.2d 1298.
In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute. Ricard v. State, 390 So.2d 882 (La.1980); Killebrew v. Abbott Labs., 359 So.2d 1275 (La.1978). Furthermore, when a statute does authorize the imposition of punitive damages, it is subject to strict construction. International Harvester Credit, 518 So.2d at 1041; State v. Peacock, 461 So.2d 1040, 1044 (La.1984). Strict construction of former Article 2315.3 mandates that only those parties who actually stored, handled, or transported the vinyl chloride at issue be held liable for punitive damages. We find support for this proposition throughout Louisiana jurisprudence.
In New Orleans Train Car, 671 So.2d at 543, an explosion and massive fire was caused by a leaking railroad tank car containing butadiene. This explosion injured several people and endangered a heavily-populated area.[5]Id. The court was confronted with the task of deciding which of eight defendants involved with the tank carfrom the manufacturer to the owner of the interchange where the car was depositedcould potentially be subject to punitive damages under Article 2315.3. The court determined that particular defendants "involved in the series of events related to the transportation of this particular load of butadiene" could be liable under the Article if they performed their duties in a wanton or reckless manner. Id. at 550-51. And, the court held that it was not essential for these defendants *556 to be in possession of the butadiene at the time of the accident. New Orleans Train Car, 671 So.2d at 549.
As the court of appeal below overlooked, crucial to the Train Car court's holding was its finding that, "implicit in storage, handling, or transporting is the requirement that the hazardous substance be in the possession or control of a person who then handles or otherwise deals with that substance." New Orleans Train Car, 671 So.2d at 546 (emphasis added). Accordingly, the court granted summary judgment on the issue of punitive damages in favor of three of the eight defendants who never had never gained possession or control of the butadiene that caused the explosion.[6]Id.
In another appellate court case, plaintiffs sought punitive damages under Article 2315.3 against a defendant who merely designed processing tanks that held the nitromethane which caused an explosion at a plant in Sterlington, Louisiana. Dumas, 728 So.2d at 436. Although the Dumas plaintiffs conceded that this defendant designer did not have contact with or control over the nitromethane at issue, they claimed that liability attaches under Article 2315.3 whenever a defendant is engaged in wanton or reckless conduct in connection with the storage, handling, or transportation. Dumas, 728 So.2d at 438. The court, citing the rule of strict construction for penal statutes, rejected this expansive interpretation of the Article and reaffirmed the rule that a defendant must be in the "possession or control" of a substance, and then handle, or otherwise deal with that substance, to be held liable for punitive damages. Id.
The possession or control requirement enunciated in New Orleans Train Car and Dumas has been consistently applied in Louisiana state and federal courts to determine whether a particular defendant's conduct constitutes "storage, handling, or transportation" under former Article 2315.3. Consequently, no court has ever extended the reach of this Article to parties who did not, at some point prior to a plaintiff's injury, physically possess or control the hazardous substance at issue. See Gaspard v. Orleans Parish Sch. Bd., 96-1754 (La.App. 4th Cir.2/5/97), 688 So.2d 1298; v. Galjour v. General Am. Tank Car Corp., 769 F.Supp. 953 (E.D.La.1991) (holding that a person with possession and control of a hazardous substance must then handle or otherwise deal with that substance to be liable under Article 2315.3); Wiltz v. Mobil Oil Exploration & Producing, Inc., 702 F.Supp. 607 (W.D.La. 1989) (reasoning that, because defendant never gained possession of a hazardous substance, it could not be said to fall within the reach of the statute).
We decline today to adopt a rule expanding the reach of Article 2315.3. We will instead follow what has clearly been the law in Louisiana for years: to recover punitive damages against a defendant under former Article 2315.3, a plaintiff must show that the defendant had actual possession or control of the hazardous or toxic substance that caused injury, and then handled or otherwise dealt with that substance at some time prior to the injury-causing event. Because none of the non-employer defendants had actual possession or control of the vinyl chloride that injured Ross and Landon, the court of appeal below *557 erred in finding that the conspiratorial acts of the non-employer defendants, which were "integrally related" to the storage, handling, and transportation of vinyl chloride, could be sufficient to invoke liability under former Article 2315.3.

CONCLUSION
We hold that, even assuming that plaintiffs can successfully prove the existence of a conspiracy amongst the employer and non-employer defendants to harm or commit a battery upon Ross and Landon and fraudulently conceal the effects of vinyl chloride, punitive damages cannot be assessed against the non-employer defendants under former Article 2315.3. These parties did not store, handle, or transport the vinyl chloride; thus, they cannot be brought within the ambit of former Article 2315.3 based on the acts of their alleged co-conspirators and the application of Article 2324. We are not called upon and do not address plaintiffs' right to seek compensatory damages against these non-employer defendants under Article 2324.
In addition, because the non-employer defendants did not have actual possession or control of the vinyl chloride that injured the workers, and did not then handle or otherwise deal with the substance, they cannot be cast with punitive damages based on their actions purportedly "integrally related" to the storage, handling, or transportation of vinyl chloride.

DECREE
For these reasons, the decision of the court of appeal is reversed and the district court's judgment granting the defendant's motion for summary judgment is reinstated.
REVERSED; JUDGMENT OF DISTRICT COURT REINSTATED.
NOTES
[1] Ross died in 1990 as a result of brain cancer; Landon died in 1997 as a result of liver cancer. Each man's disease was allegedly caused by long-term exposure to the vinyl chloride present at the Conoco and Vista facilities.
[2] The Ross suit was filed in 1990 against the employer defendants. The non-employer defendants were added in 1994. The Landon suit was filed in 1997, and included the non-employer defendants from the outset.
[3] La. Civil Code Article 2315.3 was added by La. Acts 1984, No. 335, § 1, and was repealed by La. Acts 1996, No. 2, § 1, effective April 16, 1996. For purposes of this summary judgment motion, it is assumed that the statute is applicable regarding both causes of action.
[4] In their writ application to this court, plaintiffs argue that the Bourque case is distinguishable from the case sub judice because Judge Saunders, who wrote the decision in Bourque, joined the majority in the case below. Plaintiffs assert that Bourque would have been decided differently under conspiracy law. We agree that the cases can be distinguished, as Bourque was not addressing an alleged conspiracy under Article 2324(A), but rather co-defendants alleged to have contributed to or facilitated the primary tortfeasor's conduct. Nonetheless, we agree with the reasoning of Bourque that those whose conduct is not directly targeted by the penal statute cannot be bound by Article 2324 to shoulder that responsibility. Bourque, 643 So.2d at 241. We believe the same reasoning can be applied by analogy to the facts at hand.
[5] As the court noted in a related case, the damage from the explosion could have been catastrophic: "If GATX 55996 [the tank car] had exploded, whole city blocks of a residential area could have been destroyed.... If such an explosion had occurred prior to the evacuation of the residential area surrounding CSX's interchange tracks, hundreds or even thousands of deaths and injuries could have ensued." In re New Orleans Train Car Leakage Fire Litig., 00-0479, p. 32 (La.App. 4th Cir.6/27/01), 795 So.2d 364, 386.
[6] The Train Car court correctly held that the following defendants, as a matter of law, could not be subject to punitive damages because they at no time had possession or control of the offending butadiene: (1) AMF-BRD, the manufacturer of the tank car; (2) Phillips, the company that owned the tank car from 1979-1986 and performed maintenance repairs; (3) GATC, the owner of the tank car at the time of the explosion.