960 So.2d 226 (2007)
Karen DARBY
v.
SENTRY INSURANCE AUTOMOBILE MUTUAL CO., Bruce J. Amond, and Lakeshore Chrysler, Dodge, Jeep, Inc.
No. 2007 CW 0407.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
Writ Denied March 28, 2007.
*228 W. Kenneth Klien, Slidell, for Plaintiff  Respondent Karen Darby.
Keith L. Richardson, Dale Cronin, Guglielmo, Marks, Schutte, Terhoeve & Love, Baton Rouge, for Defendants  Applicants Sentry Insurance Automobile Mutual Company, Bruce J. Amond and Lakeshore Chrysler, Dodge, Jeep, Inc.
Before: KUHN, GAIDRY, and WELCH, JJ.
PER CURIAM.
The defendants, Sentry Insurance Automobile Mutual Company, Bruce J. Amond and Lakeshore Chrysler, Dodge, Jeep, Inc. ("Lakeshore"), seek review of the trial court's judgment denying Lakeshore's motion in limine to exclude evidence of Lakeshore's financial condition and the trial court's conclusion that under theories of vicarious liability, civil conspiracy and negligent entrustment, Lakeshore could be found liable for exemplary damages.
This litigation arises out of a September 30, 2001 collision involving vehicles operated by the plaintiff, Karen Darby, and Bruce Amond. At the time of the accident, Lakeshore employed Amond as a car salesman and he was driving a vehicle owned by Lakeshore and insured by Sentry Insurance Automobile Co. ("Sentry").
Darby alleges Amond caused the collision and her injuries when he failed to stop at a red light, collided with another vehicle, and then struck and demolished the car she was driving. Darby alleges that Amond was intoxicated at the time of the accident and that Amond has a long history of alcohol abuse and driving while intoxicated, which Lakeshore either knew or should have known prior to the September 30, 2001 accident.
Darby alleges that when Lakeshore employed Amond in 1998, his driving privileges were suspended as a result of a July 7, 1995 accident, which was Amond's third-offense DWI. Darby contends Lakeshore knew or should have known of the July 7, 1995 DWI and suspension as Louisiana law requires an annual inquiry in order to obtain licensure for new and used car salespersons and Amond's driving privileges were suspended until August 25, 1999. In addition, Darby contends that Lakeshore had actual knowledge of Amond's serious alcohol abuse problem and history of driving while intoxicated as Amond lived in an apartment with Lakeshore's sales manager for about a year after Lakeshore employed him. Also, Darby alleges that Lakeshore had actual knowledge that Amond had his fourth-offense DWI on February 8, 2000, while driving a vehicle owned by Lakeshore. The fourth-offense DWI resulted in another suspension of Amond's driving privileges, which was in effect at the time of the instant September 30, 2001 accident.
In September 2003, Darby filed suit against Amond, Lakeshore and Sentry seeking general compensatory damages and La. Civ. C. art. 2315.4 punitive damages against all three defendants. On June 24, 2005, Lakeshore moved for partial summary judgment on Darby's negligent entrustment claim. Subsequently, Darby filed a "Motion for Partial Dismissal Without Prejudice and With Full Reservation of Rights," in which she conceded that Amond was not in the course and scope of his employment at the time of the accident and she asked that her respondeat superior claims against Lakeshore be dismissed without prejudice. On July 11, 2005, the *229 trial court signed an order dismissing without prejudice Darby's respondeat superior claims and reserving all of Darby's other rights and claims against the defendants.
Lakeshore filed the instant motion in limine on September 28, 2006. The trial court heard the motion and deferred judgment on the motion until the trial on the merits. Motions for reconsideration were filed and heard; and, on March 8, 2007, the trial court entered judgment permitting Darby to "introduce evidence concerning the income, assets, and net worth of Lakeshore Chrysler, Dodge, Jeep, Inc. provided that plaintiff lays a prima facie case for punitive damages against Lakeshore Chrysler, Dodge, Jeep, Inc." In its reasons for judgment, the trial court found "that, under the facts as alleged by the plaintiff, the defendant can be held liable for punitive damages." The trial court further explained that a jury could find Lakeshore liable for punitive damages under La. Civ. C. art. 2320 because "the employee was in the course and scope of his employment, and/or that the employer is liable under respondeat superior," "the employer could arguably be found solidarily liable under a theory of civil conspiracy" or also "under the theory of negligent entrustment."
The trial court's evidentiary ruling was premised on its conclusion that Lakeshore could be liable for exemplary damages. Thus, the issue to be determined in this writ is whether the trial court correctly concluded that an employer/non-driver could be found liable for La. Civ. C. art. 2315.4 exemplary damages under theories of civil conspiracy, vicarious liability or negligent entrustment when the employee/driver was not in the course and scope of his employment at the time of the accident.
Louisiana Civil Code 2315.4 allows a plaintiff to seek exemplary damages when a driver who is intoxicated causes her injuries. Louisiana Civil Code article 2315.4 reads:
Additional damages; intoxicated defendant
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
Employer's Liability for Exemplary Damages Under La. Civ. C. art. 2320
The defendants challenge the trial court's conclusion that Lakeshore could be liable for exemplary damages under the vicarious liability provisions of La. Civ. C. art. 2320. In pertinent parts, La. Civ. C. art. 2320 reads:
Acts of servants, students or apprentices
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
. . .
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it. . . . .
Under La. Civ. C. art. 2320, this Court has held that a plaintiff must show that (1) a master-servant relationship existed between the tortfeasor and the employer, and (2) the tortious act of the tortfeasor was committed within the scope and during *230 the course of his employment with the employer. Hughes v. Goodreau, 2001-2107 (La.App. 1 Cir. 12/31/02), 836 So.2d 649, 656, writ denied, XXXX-XXXX (La.4/21/03), 841 So.2d 793. The trial court determined that a jury could find that Amond acted within the "course and scope" of his employment and therefore, Lakeshore could be found vicariously liable under the theory of respondeat superior for exemplary damages. We disagree. Darby has conceded the "course and scope" requirement of her respondeat superior claim and the trial court has entered a prior ruling dismissing Darby's respondeat superior claims without prejudice. Therefore, this Court finds that the trial court erred in concluding that a jury could find Amond acted within the "course and scope of his employment" and that Lakeshore could be liable for damages under La. Civ. C. art. 2320.
Our finding pretermits a discussion as to whether an employer who is vicariously liable under 2320 is liable for exemplary as well as compensatory damages.[1]
Employer's Liability for Exemplary Damages Under Civil Conspiracy Theory
Using La. Civ. C. art. 2324 as a starting point, the trial court reasoned that a jury could find that Lakeshore and Amond conspired to violate La. R.S. 32:417, which prohibits an employer from employing a driver who does not have a current and valid license, which conspiracy then allowed Amond to engage in the prohibited 2315.4 conduct.[2] In part, La. Civ. C. art. 2324 reads:
Liability as solidary or joint and divisible obligation
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault,. . . .
In essence, it appears that the trial court determined that Lakeshore's solidary/joint liability under La. Civ. C. art. 2324 extends not only to the alleged conspiracy to violate the prohibition found in La. R.S. *231 32:417 of employing someone as a driver who does not have a current and valid license, but also to Amond's subsequent La. Civ. C. art. 2315.4 conduct. The trial court cited Ross v. Conoco, Inc., XXXX-XXXX (La.10/15/02), 828 So.2d 546, as support for its conclusion. However, we find the trial court's reliance on Ross is misplaced as Ross stands for the proposition that the in solido liability provision of La. Civ. C. art. 2324 only extends to compensatory type damages and does not extend to punitive or exemplary damages. While Ross relies on liability for exemplary damages imposed by former La. Civ. C. art. 2315.3, the Supreme Court's analysis of the scope of a co-conspirator's in solido liability, including whether such scope includes exemplary damages is instructive in this matter.
In Ross, the family members of deceased chemical workers sued the workers' employers and other non-employer defendants alleging that the defendants conspired to commit the "intentional tort of battery by overexposing" the decedents to vinyl chloride. Ross, 828 So.2d at 549. In addition to seeking compensatory damages, the plaintiffs sought exemplary damages under former La. Civ. C. art. 2315.3. Under former La. Civ. C. art. 2315.3, a jury could award exemplary damages to a plaintiff who could prove that his injury was "caused by the defendant's wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances."[3]Ross, 828 So.2d at 549.
The Ross plaintiffs alleged that, although the non-employer defendants did not themselves physically possess the hazardous vinyl chloride that harmed the decedents, they can, nonetheless, be held liable for exemplary damages based on the actual physical handling by their co-conspirators, the employer defendants. The Ross plaintiffs contended that "[o]nce a conspiracy is successfully proved, the act of one co-conspirator is deemed to be the act of all co-conspirators." Id. The plaintiffs argued "actual possession or control on the part of the non-employer defendants is irrelevant because under the law of conspiracy, the act of handling by the employer defendants is treated as handling by all conspiring defendants." Ross, 828 So.2d at 551.
Alternatively, the plaintiffs contended that "the individual acts of the non-employer defendants, including misrepresentation of the effects of vinyl chloride and failure to warn, amount to `storage, handling, or transportation' under the meaning of repealed La. Civ. C. art. 2315.3." Ross, 828 So.2d at 549. In other words, the plaintiffs contended, "these non-employer defendants are subject to being cast for punitive damages in their own right, not based on the acts of the employer defendants." Id.
In deciding whether La. Civ. C. art. 2324 could be the basis for casting the non-employer defendants for the exemplary damages of their co-conspirators, the Supreme Court stated "[a]rticle 2324 . . . does not by itself impose liability for a civil conspiracy. The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort the conspirators agreed to perpetrate and which they actually commit in whole or in part." Ross, 828 So.2d at 552. The Supreme Court stated that the Ross "plaintiffs have not alleged a conspiracy to store, handle, or transport vinyl chloride in a wanton or reckless manner. The underlying torts plaintiffs allege that the defendants agreed to perpetrate and actually committed were *232 battery upon and failure to warn the two workers." Id.
The Supreme Court determined that a "conspiracy to commit battery and a corresponding failure to warn are not targeted by former La. Civ. C. art. 2315.3, which punishes only defendants involved in storage, handling and transportation of a hazardous or toxic substance." Id. Therefore, the Supreme Court found that "former Article 2315.3 does not support the imposition of punitive damages against parties based solely on the physical acts of their co-conspirators." Id.
As part of its reasoning, the Supreme Court stated that the "purpose of solidary liability is to compel any tortfeasor to pay an entire judgment." Id. The Supreme Court added that the "purpose of punitive damages, on the other hand, are to punish defendants and deter similar conduct." Id. Citing to a First Circuit analysis in another decision, the Supreme Court agreed with this Court's statement "that punitive damages cannot be assessed against co-defendants in solido because, to accomplish their purpose of punishment and deterrence, punitive damages are assessed against an individual defendant based on his individual culpability, not on the acts of others." Id. The Supreme Court added "the language of Article 2324 that co-conspirators are answerable in solido `for the damage caused by such act' indicates that the Article imposes solidary liability only for compensatory damages." Id. As such, the Supreme Court concluded in Ross:[4]
[T]he solidarity imposed by Article 2324 cannot be used to assess punitive damages against a party based on the acts of co-conspirators. To be subject to punitive damages, each co-conspirator's individual conduct must fall within the scope of the applicable penal statute. Ross, 828 So.2d 553.
As to whether the non-employer defendant's conduct was included in the scope of former La. Civ. C. art. 2315.3's prohibited behavior, the Supreme Court looked at the "plain language of former Article 2315.3" and concluded that the plain language "does not indicate that the legislature intended for parties engaged in activities beyond direct storage, handling, or transportation of a hazardous or toxic substance to fall within the ambit of the Article." Id. The Supreme Court also concluded, "[c]onsidering that this court's policy is to construe punitive statutes strictly, we see no reason to infer a legislative intent beyond the plain language of the statute." Id. The Supreme Court also included a brief summary of the legislative history of La. Civ. C. art. 2315.3 and corresponding committee meeting minutes and further concluded that the history "gives no indication that our legislature was concerned with targeting the remote conspiratorial conduct, as is urged by the plaintiffs in this suit." Id.
The Ross decision also addressed the plaintiffs' alternative argument that the non-employer defendants' conduct constitutes storage, handling or transportation, which exposes the non-defendant employers to former La. Civ. C. art. 2315.3 damages in their own right, which we also find instructive in the instant matter. Again, the Supreme Court cited the rule of strict construction for penal statutes and declined "to adopt a rule expanding the reach of Article 2315.3." Ross, 828 So.2d at 556. Accordingly, the Supreme Court held "because the non-employer defendants did not have actual possession or control of the vinyl chloride that injured the workers, and did not then handle or otherwise deal *233 with the substance, they cannot be cast with punitive damages based on their actions purportedly `integrally related' to the storage, handling, or transportation of vinyl chloride." Ross, 828 So.2d at 557.
Considering Louisiana law requires exemplary statutes to be strictly construed and considering the Supreme Court's conclusion in Ross that "punitive damages cannot be assessed against co-defendants in solido," this Court concludes that even if a jury finds that Lakeshore conspired with Amond to violate La. R.S. 32:417, it cannot be held liable, in solido for its alleged co-conspirator's prohibited La. Civ. C. art. 2315.4 conduct and, therefore, La. Civ. C. art. 2315.4 exemplary damages. See Ross, 828 So.2d at 552.
Employer's Liability for Punitive Damages Under Negligent Entrustment
Under the negligent entrustment theory, "the lender of a vehicle is not responsible for the negligence of the borrower, unless he had or should have had knowledge that the borrower was physically or mentally incompetent to drive." Stokes v. Stewart, XXXX-XXXX (La.App. 1 Cir. 12/22/00), 774 So.2d 1215, 1219 (citations omitted). However, "an owner of an automobile who knowingly entrusts it to an intoxicated, or otherwise incompetent, driver is responsible for the harm resulting from the incompetent operation of the vehicle." Id. This Court has not directly addressed whether La. Civ. C. art. 2315.4 damages can be imposed on a negligent entrustment employer/defendant when the employee/driver was not in the course and scope of his employment at the time of the accident.[5]
However, as previously discussed, Louisiana law requires exemplary statutes to be strictly construed. With that principle in mind, La. Civ. C. art. 2315.4's explicit language requires proof that the "injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries." La. Civ. C. art. 2315.4. (emphasis added). Arguably, a jury could find that Lakeshore acted in "wanton or reckless disregard for the rights and safety of others" by providing Amond with its vehicle. However, such a finding would not fulfill all of the requirements the legislature set out in La. Civ. C. art. 2315.4 and would require an interpretation that ignores the provision, "by a defendant whose intoxication while operating the vehicle was a cause in fact of the resulting injuries." The Supreme Court has stated, "[c]ourts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless if that result can be avoided." Pepper v. Triplet, XXXX-XXXX (La.1/21/04), 864 So.2d 181, 194. It is clear that La. Civ. C. art. 2315.4 requires more than a showing of "wanton or reckless disregard for the rights and safety of others" by a defendant. Accordingly, this Court finds that Lakeshore's potential liability for damages under the theory of negligent entrustment does not *234 extend to La. Civ. C. art. 2315.4 exemplary damages.
While we find that the plain language of La. Civ. C. art. 2315.4 does not impose exemplary damages on Lakeshore as a non-driver defendant, out of an abundance of caution we address the alternative argument posed in Ross of whether Lakeshore's conduct arguably falls within the scope of conduct that La. Civ. C. art. 2315.4 seeks to punish. Once again, we find that the principle of strict construction of punitive statutes prohibits such a conclusion. Moreover, the Supreme Court has stated "[w]e will not construe penal statutes as extending powers not authorized by the letter of the law even if such powers would be arguably within its spirit." Gibbs Const. Co., Inc. v. State, Dept. of Labor, 540 So.2d 268, 269 (La.1989); see also In the Matter of Woodrow Wilson Const. Co., Inc., 563 So.2d 385, 391 (La.App. 1 Cir.1990). Therefore, this Court finds that Louisiana law prohibits an expansive interpretation of La. Civ. C. art. 2315.4 so as to impose exemplary damages on Lakeshore for entrusting its vehicle to a driver who became intoxicated and caused an accident.
Conclusion
When liability for exemplary damages is an issue at trial, evidence as to the defendant-tortfeasor's current financial condition is relevant and may be considered by the trier of fact in determining the appropriateness of exemplary damages. Bienvenu v. Dudley, 95-0547 (La.App. 1 Cir. 10/3/96), 682 So.2d 281, 285, writ denied, 96-2661 (La.12/13/96), 692 So.2d 1069, and writ denied, 96-2673 (La.12/13/96), 692 So.2d 1070. The district court judge has great discretion in determining the relevancy and probative value of evidence, and his determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. Entergy Gulf States, Inc. v. Louisiana Public Service Commission, XXXX-XXXX (La.4/16/99), 730 So.2d 890, 928.
The court holds that under the facts, circumstances and procedural history submitted by the parties, the defendants, Sentry Insurance Automobile Mutual Company, Bruce J. Amond and Lakeshore Chrysler, Dodge, Jeep, Inc., have met their burden of proving that Lakeshore Chrysler, Dodge, Jeep, Inc.'s financial condition is not relevant since there are no viable claims by the plaintiff for exemplary damages pursuant to La. Civ. C. art. 2315.4 against Lakeshore. See La. C.E. art. 402.[6] Therefore, this Court concludes that the trial court abused its discretion in allowing evidence of Lakeshore Chrysler, Dodge, Jeep, Inc.'s financial condition to be presented at trial. Accordingly, the writ is granted, the trial court's judgment denying the defendants' motion in limine is reversed and the defendants' motion in limine is granted.
WRIT GRANTED. STAY DENIED.
NOTES
[1] Citing two Fourth Circuit cases, the trial court concluded that pursuant to La. Civ. C. arts. 2320 and 2315.4, an employer's vicarious liability includes punitive and compensatory damages. See, Lacoste v. Crochet, XXXX-XXXX (La.App. 4 Cir. 1/5/00), 751 So.2d 998, 1004; and Curtis v. Rome, XXXX-XXXX (La. App. 4 Cir. 5/5/99), 735 So.2d 822, 825, writ denied, Rambo v. Rome, XXXX-XXXX (La.10/1/99), 748 So.2d 441. However, as this Court is not bound by the decision of our colleagues on this issue and such a conclusion may be contrary to the principle of strict construction of punitive statutes, we leave that analysis for another day.
[2] La. R.S. 32:417(C) and (E)

It shall be unlawful for any person or entity to employ any person as a driver of a motor vehicle if said person being employed does not have a current, valid license issued by the department in accordance with the provisions of this Chapter.
. . .
The following penalties shall be imposed for a violation of this Section:
(1) The person shall be fined not less than one hundred dollars and not more than five hundred dollars for each offense, or imprisoned for not more than six months, or both. . . . .
[3] La. Civ. C. art. 2315.3 was added by La. Acts 1984, No. 335 § 1, and repealed by La. Acts 1996, No. 2, § 1, effective April 16, 1996. Ross, 828 So.2d at FN3.
[4] James v. Formosa Plastic Corp., 95-1794, p. 4 (La.App. 1 Cir. 4/4/96), 672 So.2d 319, 322, writ denied, 96-1091 (La.11/22/96), 683 So.2d 285.
[5] In Stokes, the plaintiff sued a non-driver defendant for both compensatory and La. Civ. C. art. 2315.4 damages under theories of vicarious liability and negligent entrustment. The trial court rejected the negligent entrustment claim because the plaintiff failed to produce proof that the non-driver defendant had reason to know on the morning of the accident that the driver defendant was incompetent to drive. On appeal, this Court found that the trial court correctly rejected the negligent entrustment claim. Therefore, the issue of punitive damages under the theory of negligent entrustment was not addressed. Stokes, 774 So.2d at 1220.
[6] La. C.E. art. 402. Relevant evidence generally admissible; irrelevant evidence inadmissible

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.