THIBODEAUX, Chief Judge,
Dissenting.
_JjThe majority is simply wrong.
The majority quotes La.Civ.Code art. 2320 emphasizing that portion which states that the vicarious responsibility only attaches when the masters might have prevented the act which caused the damage and have not done it. The majority then states: “there is no evidence nor allegation that Stanford ‘might have prevented’ Vid-rine’s intoxication.” The majority also notes that “[t]here is nothing in the record which demonstrates any behavior on the part of Stanford for which Stanford should be penalized as an offending tortfeasor.” The majority further points that no damages can be assessed against Stanford “especially where there has been no allegation nor any showing made that Stanford in any manner contributed to Vidrine’s intoxication.”
Neither compensatory nor punitive damages would accrue to Stanford because La. Civ. Code art. 2320 applies, at the very least, to compensatory damages. Moreover, this view fails to recognize that if there were evidence of Stanford’s behavior in that manner, the plaintiff would not need the vicarious theory of liability. It could proceed against Stanford directly. The majority’s interpretation of the statute would render the doctrine of respondeat superior virtually meaningless by limiting *795 the |2employer’s liability to those cases in which the employer would itself be directly liable. If this understanding of the majority’s holding is correct, and Stanford is not vicariously liable even for the compensatory damages, I fail to comprehend why the majority goes on to discuss vicarious liability for the punitive damages.
If for some reason I have misunderstood the majority’s reasoning, and Stanford can be liable for compensatory damages, then, Stanford is liable for punitive damages as well. The majority begins by an erroneous assertion: “our courts have not had occasion to rule directly on the question of whether punitive damages ... can be imposed upon a party vicariously liable for general damages.... ” In fact, “[ejmploy-ers have been held vicariously responsible for the punitive damages chargeable to their employee-drivers.” 12 William E. Crawford, Louisiana Civil Law Treatise § 9:16 (2d ed.2009) (citing Lacoste v. Crochet, 99-602 (La.App. 4 Cir. 1/5/00), 751 So.2d 998; Curtis v. Rome, 98-966-70 (La.App. 4 Cir. 5/5/99), 735 So.2d 822, writ denied, Rambo v. Rome, 99-1617 (La.10/1/99), 748 So.2d 441). Thus, while ignoring the on-point jurisprudence, the majority relies exclusively on the jurisprudence which held La.Civ.Code art. 2324 (liability as solidary or joint and divisible obligation) inapplicable to expand the liability for punitive damages on other defendants (Ross v. Conoco, Inc., 02-299 (La.10/15/02), 828 So.2d 546; Bourque v. Bailey, 93-1657 (La.App. 3 Cir. 9/21/94, 643 So.2d 236), writ denied, 94-2619 (La.12/16/94), 648 So.2d 392). For the following reasons, this reliance is, at best, misguided.
First, when the supreme court faced the question as to whether solidarity liable defendants could be solidarity liable for punitive damages, it expressly cautioned that its analysis did not encompass vicariously liable defendants. Berg v. Zummo, 00-1699 (La.4/25/01), 786 So.2d 708. Second, the same court that held the employer vicariously liable for punitive damages distinguished that jurisprudence and ruled that l.gthe solidarity of an obligation to pay compensatory damages does not make all of the defendants solidarily liable for punitive damages. Berg v. Zummo, 99-974 (La.App. 4 Cir. 5/10/00), 763 So.2d 57, rev’d on other grounds, 00-1699 (La.4/25/01), 786 So.2d 708. Thus, both the supreme court and our sister jurisdiction at the fourth circuit had no difficulty recognizing that solidary and vicarious liability are two completely different and unrelated theories of liability.
Quoting at some length Ross, 828 So.2d 546, the majority fails to distinguish the relationship and the accompanying policy considerations between the punitively — liable tortfeasor and his co-conspirators and the punitively — liable tortfeasor and his employer. The focus in the conspirators’ punitive liability is on the person(s) whose culpable conduct caused plaintiffs injuries. Thus, “the solidarity imposed by Article 2324 cannot be used to assess punitive damages against a party based on the acts of co-conspirators. To be subject to punitive damages, each co-conspirator’s individual conduct must fall within the scope of the applicable penal statute.” Id. at 553. The theory of vicarious liability is different in that the focus is not on the culpability of the defendant but on who will be paying for the damages once they are assessed. This is because a corporate employer who acts only through its employees is always deemed culpable when the employee, acting in the course and scope of the employment, is held liable for punitive damages.
The courts of this state have understood this wisdom for some time. Over ten years ago, the fifth circuit confronted the question of whether to assess punitive *796 damages against the principal whose agent was held liable for punitive damages. There, the presently-repealed statute authorized punitive damages for wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. The court observed:
|4It seems to us that to hold that the negligence of an agent cannot be imputed to the principal in awarding punitive damages would have the effect of virtually eliminating punitive damage awards. Likewise, in order to avoid punitive damage liability, a corporation would simply have to create a separate entity to perform the hazardous activities, thus insulating itself from punitive liability. To allow punitive liability to be so easily sidestepped runs counter to the legislature’s public policy concerns in imposing punitive damages in certain enumerated situations. As such, we find that negligence for punitive damages, like any other type of negligence, may be imputed to a principal through the acts of an agent.
Rivera v. United Gas Pipeline Co., 96-502, 96-503, 97-161, p. 10 (La.App. 5 Cir. 6/30/97), 697 So.2d 327, 336, writs denied, 97-2030-32, 97-2034, (La.12/12/97), 704 So.2d 1196-97.
The fourth circuit, when presented with the same question this court now faces, has ruled twice that the employer is vicariously responsible for the punitive damages assessed against its intoxicated employee-driver in Curtis, 735 So.2d 822 and in Lacoste, 751 So.2d 998. Most likely because the resolution of the issue was so self-explanatory and self-evident the fourth circuit did not provide much reasoning behind its decision. I have no doubt, though, that the court was driven by the same considerations the fifth circuit so aptly observed in Rivera, 697 So.2d 327 noted above.
These observations are certainly not new. Over a hundred years ago, the courts of this country had the acumen of holding corporations vicariously liable for punitive damages and noted the folly of requiring corporate culpability independent of the employee’s culpability:
A corporation is an imaginary being. It has no mind but the mind of its servants; it has no voice but the voice of its servants; and it has no hands with which to act but the hands of its servants. All its schemes of mischief, as well as its schemes of public enterprise, are conceived by human minds and executed by human hands; and these minds and hands are its servants’ minds and hands. All attempts, therefore, to distinguish between the guilt of the servant and the guilt of | fithe corporation; or the malice of the servant and the malice of the corporation; or the punishment of the servant and the punishment of the corporation, is sheer nonsense; and only tends to confuse the mind and confound the judgment. Neither guilt, malice, nor suffering is predicable of this ideal existence, called a corporation. And yet under cover of its name and authority, there is in fact as much wickedness, and as much that is deserving of punishment, as can be found anywhere else. And since these ideal existences can neither be hung, imprisoned, whipped, or put in the stocks, — since in fact no corrective influence can be brought to bear upon them except that of pecuniary loss, — it does seem to us that the doctrine of exemplary damages is more beneficial in its application to them, than in its application to natural persons. If those who are in the habit of thinking that it is a terrible hardship to punish an innocent corporation for the wickedness of its agents and servants, will for a *797 moment reflect upon the absurdity of their own thoughts, their anxiety will be cured.... There is but one vulnerable point about these ideal existences, called corporations; and that is, the pocket of the monied power that is concealed behind them; and if that is reached they will wince. When it is thoroughly understood that it is not profitable to employ careless and indifferent agents, or reckless and insolent servants, better men will take their places, and not before.
Goddard v. Grand Trank Ry., 57 Me. 202, 223-24 (1869) (emphasis added). Thus, when an employee is culpable and is liable for punitive damages, the corporate employer is always culpable as well because the corporate employer acts only through its employees.
Even if one entertains the idea that the employer is an innocent party the result must be, nevertheless, the same. The majority states that La.Civ.Code art. 2315.4 “is clearly aimed at the offending person’s behavior and none other.” That an insurer has been held liable for punitive damages assessed against its insured makes the majority’s observation erroneous. See Sharp v. Daigre, 555 So.2d 1361 (La.1990); Creech v. Aetna Cas. & Sur. Co., 516 So.2d 1168 (La.App. 2 Cir.1987), writ denied, 519 So.2d 128 (La.1988). “LSA-C.C. art. 2815.4 has a dual purpose, to penalize (and therefore deter) the drunk driver, as well as to provide damages for the victim of such | (¡driver.” Sharp v. Daigre, 545 So.2d 1063, 1064-65 (La.App. 1 Cir.1989), aff'd, 555 So.2d 1361 (La.1990) (citing Morvant v. U.S. Fid. & Guar. Co., 538 So.2d 1107 (La.App. 5 Cir.), writ denied, 541 So.2d 875 (La.1989)). As I have mentioned before, a different set of policy considerations applies when it comes to employers as opposed to co-conspirators, and those considerations are similar to those which hold an insurer liable for punitive damages.
The court explained:
Although the purpose of punitive damages is to punish and deter, the injured party receives the benefit of such payment and from the plaintiffs standpoint, punitive damages are additional compensation for the egregious conduct inflicted upon him.
It is true that the purpose of punitive damages is to discourage egregious conduct. However, deterrence is one of the complex of purposes that is said to lie at the heart of all tort law, not merely that aspect labeled “punitive.”
Creech, 516 So.2d at 1173 (citation omitted).
Unlike the case of co-conspirators, the focus, when it comes to insurers and employers, is not on whose culpable conduct caused the injury but on who is responsible to pay the damages once the injury occurred. Even if I accepted the premise that the employer is an innocent party, the employer is still liable just like the innocent insurer is. This is because once the injury occurs in the manner that our legislature has deemed atrocious, reprehensible, and outrageous by way of providing for punitive damages between the two innocent parties: the victim and the insurer or the victim and the employer, the party who is more capable to bear the loss should do so. In this case, it is the employer.
Both employers and insurers accept the responsibility to pay for the culpable conduct of their employees and insureds, respectively. Like an insurer who |7chooses to insure a particular risk, an employer chooses to employ a particular person.[1] *798 The only difference is that the insurer accepts the responsibility contractually, and the employer does so by virtue of hiring the person. Again, if the employer were indeed culpable[2] and not simply deemed to be so, then the plaintiff would be able to proceed directly against the employer and would not need to rely on a theory of vicarious liability.
The majority quotes Ross, 828 So.2d 546, at some length regarding the object of punitive damages. As explained above, the object of deterrence is achieved if the exemplary “damages will encourage employers to exercise closer control over their servants for the prevention of outrageous torts.” W. Page Keeton et al., PRos-ser & Keeton on the Law of Torts § 2 (5th ed.1984). Yet, I also note that the majority fails to recognize that punitive damages have a “hybrid nature.” 6 Saul Litvinoff, Louisiana Civil Law Treatise § 7.2 (1999). “Deterrence is only one aspect of exemplary damages.” Sharp, 545 So.2d at 1068. “It is true that the purpose of punitive damages is to discourage egregious conduct. However, deterrence is one of the complex of purposes that is said to lie at the heart of all tort law, not merely that aspect labeled ‘punitive.’ ” Creech, 516 So.2d at 1173 (citation omitted). See also 6 |sSaul Litvinoff, Louisiana Civil Law Treatise § 7.2, 7.7 (1999) for a discussion on the nature of punitive damages.
Moreover, in our legal system where the plaintiff bears her attorney costs, it is difficult to maintain that compensatory damages adequately compensate the victim. Thus, punitive damages, in addition to punishing the tortfeasor, help defray the plaintiffs legal expenses as well as “solace the plaintiff for mental anguish, laceration of his feelings, shame, degradation, or other aggravations of the original wrong.” Sharp, 545 So.2d at 1064 (quoting Black’s Law Dictionary 352 (5th ed.1979)). Therefore, holding the employer vicariously liable for the punitive damages assessed against its employees acting in the course and scope of their employment achieves all of the goals of punitive damages.
For the foregoing reasons, I respectfully dissent.

. In fact, insurers have been held to an even higher standard. Thus, a plaintiff may recov *798 er punitive damages against the insurer under the uninsured motorist coverage. In the case of uninsured motorist, the insurer never knows against whom it is insuring. Nevertheless, the insurer is liable for the punitive damages because "compensation for the victim plaintiff is an aspect of LSA-C.C. art. 2315.4, which is just as important as is deterrence.” Sharp, 545 So.2d at 1065 (quoting Morvant, 538 So.2d at 1109).

. Under the majority’s reasoning, I cannot see how the corporate employer could ever be culpable or liable for any damages, compensatory or exemplary. This is because when one states that a corporation is culpable it means not that the corporation has acted in a particular manner, because it is impossible for it to do so, but it means that its agents/employees acted so. I believe it is safe to assume that when faced with any liability, a corporation (again, thorough its other employees and agents) would attempt to shift the responsibility from itself and onto the employees claiming innocence. If we follow the majority’s reasoning to its logical conclusion, then a corporate defendant would never be liable for anything. When the majority stresses the lack of evidence of Stanford’s contribution to Vidrine's intoxication, the majority implicitly requires an impossibility. "Stanford’s behavior” will always be through its employees only. Thus, because "Stanford” never really acts, it will be liable for neither compensatory nor punitive damages. Instead, only Stanford’s employees will be liable.